DARYL G. PARKER (State Bar No. 47048)
JAMES E. MAHONEY
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067-4100
(310) 277-6910
Email:    dparker@pszjlaw.com

DAVID T. MALOOF (*pro hac vice*)
THOMAS M. EAGAN (*pro hac vice*)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue - Suite 190
Rye, New York 10580
(914) 921-1200
Email:    dmaloof@maloofandbrowne.com
            teagan@maloofandbrowne.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIPPONKOA INSURANCE COMPANY, LTD. | Case No.:  **2:12 Civ. 05801 CAS (AGRx)** |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ON THE GROUNDS OF *FORUM NON CONVENIENS*** |
| vs. | |
| CEVA LOGISTICS U.S., INC. and CEVA FREIGHT, LLC, | **HEARING DATE: August 27, 2012 TIME: 10:00 a.m.** |
| Defendants. | **PLACE:        312 North Spring Street Courtroom 5 Los Angeles, CA 90012** |

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................. 1

STATEMENT OF FACTS .............................................................................. 5

    A. Facts Concerning the Movement of the Cargo ............................... 5

    B. Facts Concerning the TAIS-CEVA Contract ................................. 6

SUMMARY OF ARGUMENT ....................................................................... 9

ARGUMENT ................................................................................................... 9

I.    THE PARTIES AGREEMENT TO APPLY THE CARMACK AMENDMENT TO THEIR CONTRACT REQUIRES A U.S. FORUM AND THEREFORE ENDS THE FORUM NON CONVENIENS INQUIRY ............................................................................................ 10

II.   MEXICO IS NOT AN ADEQUATE ALTERNATIVE FORUM FOR THIS ACTION ....................................................................................... 12

III.  THE PRIVATE INTEREST FACTORS HERE ARE IN BALANCE, WITH WITNESSES SCATTERED WORLDWIDE ............................. 14

    A. The Residence of the Parties and the Witnesses ......................... 15

    B. The Forum's Convenience to the Litigants ................................. 17

    C. Ease of Access to Evidence ......................................................... 17

    D. The Availability of Compulsory Process for Unwilling Witnesses .......... 18

    E. The Cost for Cooperative Witnesses to Attend Trial .................. 19

    F. Enforceability of Any Judgment .................................................. 21

    G. Other Practical Problems ............................................................. 21

    H. CEVA's Asserted Need to Implead Third-Parties Under Separate Contracts Does Not Compel Transfer .......................................... 22

IV.  THE PUBLIC INTEREST FACTORS HERE WEIGH STRONGLY IN FAVOR OF A UNITED STATES FORUM ......................................... 23

CONCLUSION ............................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Alcoa S.S. Co., Inc. v. M/V Nordic Regent,*
 654 F.2d 147 (2d. Cir. 1980)......................................................................15

*Allstate Ins. Co. v. Mazzola,*
 175 F.3d 255 (2d Cir. 1999)........................................................................10

*Alpine View Co. Ltd. v. Atlas Copco AB,*
 205 F.3d 208 (5th Cir. 2000) ......................................................................13

*Altmann v. Republic of Austria,*
 317 F.3d 954, 974 (9th Cir. 2002)
 *opinion amended on denial of reh'g,* 327 F.3d 1246 (9th Cir. 2003)
 and *aff'd on other grounds,* 541 U.S. 677 (2004) ......................................24

*Blanco v. Banco Indus. de Venezuela, S.A.,*
 997 F.2d 974 (2d Cir. 1993)........................................................................17

*Boston Telecomms. Group, Inc. v. Wood,*
 588 F.3d 1201 (9th Cir. 2009) ........................................................15, 22, 24

*Carijano v. Occidental Petroleum Corp.,*
 643 F.3d 1216 (9th Cir. 2011) ........................................................13, 16, 17

*Deirmenjian v. Deutsche Bank, A.G.,*
 2006 WL 4749756 (C.D. Cal. 2006)............................................................16

*Dole Food Co., Inc. v. Watts,*
 303 F.3d 1104 (9th Cir. 2002) ........................................................10, 19, 24, 25

*Extractora De Productos Vegetale Y Animales S.A. v. M/V Sonia M.,*
 1991 WL 267918, 1991 A.M.C. 2953 (S.D.N.Y. 1991) ..............................16

*Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.,*
 466 F. Supp. 71 (S.D.N.Y. 1978)................................................................17

*Gates Learjet Corp. v. Jensen,*
 743 F.2d 1325 (9th Cir. 1984) ....................................................................18

*Gibbs v. Hawaiian Eugenia Corp.,*
 966 F.2d 101 (2d Cir. 1992)........................................................................10

*HSBC USA, Inc. v. Prosegur Paraguay, S.A.,*
 2004 WL 2210283 (S.D.N.Y. 2004)......................................................19, 22

*Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.,*
 2007 WL 163111 (S.D.N.Y. 2007)..............................................................19

*In re Hanger Orthopedic Group, Inc., Securities Litigation,*
 418 F. Supp. 2d 164 (E.D.N.Y. 2006) .........................................................25

ii

*Industria Fotografica Interamericana S.A. de C.V. v. M.V. Jalisco,*
   903 F. Supp. 18, 1996 A.M.C. 769 (S.D. Tex. 1995) ........................................17

*Kielczynski v. Consol. Rail Corp.,*
   837 F. Supp. 687 (E.D. Pa. 1993) ....................................................................19

*Koster v. (Am.) Lumbermens Mut. Cas. Co.,*
   330 U.S. 518 (1947) .........................................................................................15

*Lehman v. Humphrey Cayman, Ltd.,*
   713 F.2d 339 (8th Cir. 1983 ..............................................................................22

*Lockman Found. v. Evangelical Alliance Mission,*
   930 F.2d 764 (9th Cir. 1991) ............................................................................10

*Lueck v. Sundstrand Corp.,*
   236 F.3d 1137 (9th Cir. 2001) ..........................................................................10

*Mercier v. Sheraton Int'l, Inc.,*
   935 F.2d 419 (1st Cir. 1991) .............................................................................16

*Miller v. Consol. Rail Corp.,*
   196 F.R.D. 22 (E.D. Pa. 2000) .........................................................................19

*Missouri Pac. R.R. Co. v. Elmore & Stahl,*
   377 U.S. 134 (1964) .........................................................................................18

*NipponKoa Ins. Co., Ltd. v. Ceva Logistics, U.S., Inc.,*
   1:09-cv-01279-RMB (S.D.N.Y.) ........................................................................9

*NipponKoa Ins. Co., Ltd. v. Ceva Logistics, U.S., Inc., and Ceva Freight, LLC,*
   2012 WL 2550278 (S.D.N.Y. 2012) ...................................................................3

*NipponKoa Ins. Co., Ltd., v. Ceva Logistics U.S., Inc.,*
   1:10-cv-09233-WHP (S.D.N.Y.) ........................................................................9

*O'Donnell v. Club Mediterranee S.A.,*
   2008 WL 794975 (E.D.N.Y. 2008) .............................................................19, 22

*Olympic Corp. v. Societe Generale,*
   462 F.2d 376 (2d Cir. 1972) ..............................................................................22

*Palacios v. The Coca-Cola Co.,*
   757 F. Supp. 2d 347 (S.D.N.Y. 2010) ...............................................................22

*Ravelo Monegro v. Rosa,*
   211 F.3d 509 (9th Cir. 2000) ............................................................................16

*Reid-Walen v. Hansen,*
   933 F.2d 1390 (8th Cir. 1991) ..........................................................................22

iii

*Seguros Comercial Americas S.A. de C.V. v. Am. President Lines, Ltd.,*
  910 F. Supp. 1235, 1996 A.M.C. 1441 (S.D. Tex. 1995)
  *vacated in part*, 105 F.3d 198 (5th Cir. 1996) ...................................................16

*Smallwood v. Allied Van Lines, Inc.,*
  660 F.3d 115 (9th Cir. 2011) ...................................................................12

*Tuazon v. R.J. Reynolds Tobacco Co.,*
  433 F.3d 1163 (9th Cir. 2006) ............................................................16, 21

*United States Merch. & Shippers' Ins. Co.*
  *v. A/S Den Norske Afrika og Australie Line,*
  65 F.2d 392 (2d Cir. 1933)........................................................................15

*Wiwa v. Royal Dutch Petroleum Co.,*
  226 F.3d 88 (2d Cir. 2000)........................................................................20

**<u>Statutes</u>**

49 U.S.C. § 14706 .......................................................................8, 12, 18

49 U.S.C. § 14706(d)(1) ..............................................................................12

**<u>Other Authorities</u>**

Charles A. Wright, Arthur R. Miller, & Edward H. Cooper,
  *Federal Practice and Procedure* § 3851 (3d ed. 2011) ..............................19

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, NipponKoa Insurance Company, Ltd. (hereinafter "NipponKoa"), by its undersigned attorneys, Pachulski Stang Ziehl & Jones LLP and Maloof Browne & Eagan LLC, hereby submits its Opposition to Defendants CEVA Logistics U.S., Inc. and CEVA Freight, LLC's (collectively "CEVA") Motion to Dismiss on the Grounds of *Forum Non Conveniens*.

## INTRODUCTION

By selectively marshaling the facts, CEVA does an excellent job of creating the misimpression that this case, at its core, is a tort claim and a dispute about torts taking place in the country of Mexico.

In fact, this case, at its core is a contract claim and a dispute about words placed on a piece of paper, but not complied with, which were drafted, negotiated, agreed to, signed, breached, incorporated the laws of, and agreed to a venue in, the United States, and more particularly California.

Although the case involves the loss of cargo shipped from China to Mexico, the location of the loss has nothing to do with the two remaining contract claims.[1]  The contract issues concern, *inter alia*:

- CEVA's failure to procure cargo insurance in favor of the shipper TAIS, and its failure to include TAIS and its cargo underwriter NipponKoa as a named insured on all policies.  (Ex. 1, ¶ 11 to Decl. of Alan Lowe; Ex. 2 to Lowe Decl. at ¶ 1.5).

---

[1] The Amended Complaint transferred to this Court from the Southern District of New York, contained four causes of action: Breach of Contract of Carriage, Breach of Contract to Procure Insurance, Breach of Bailment Obligations, and Negligence/Gross Negligence/Recklessness/Willful and Wonton Conduct.  Ex. 1 to Declaration of Thomas M. Eagan in Opposition to CEVA's Motion to Dismiss.  In this action, however, Plaintiff has now filed a motion to amend its Complaint to remove the bailment and tort-based claims.  Thus, the only remaining claims to be litigated in this Court involve the two forms of breach of contract.  *See* proposed Second Amended Complaint, Ex. 2 to Declaration of Thomas M. Eagan in Opposition to CEVA's Motion to Dismiss.

1

- Whether CEVA failed to timely pay the claim (and its contractual agreement to pay additional monies as a result) (Ex. 1 to Lowe Decl., ¶12.8).

- Whether CEVA failed to ensure in its subcontracts that its downstream carriers, etc. agreed to be liable to TAIS to the same extent as CEVA (Ex. 1 to Lowe Decl., ¶ 10).

Thus, the circumstances of the loss in Mexico have nothing to do with the issue in the case. The Mexican location of this loss is entirely fortuitous, and, largely, irrelevant.

As already found by Judge Shira A. Scheindlin in her decision transferring this case from the Southern District of New York to the Central District of California (but not referenced by CEVA) the following is no longer in dispute:

In June 2003, Toshiba American Information Systems ("Toshiba"), a California corporation with its principal place of business in California, contracted with Eagle Global Logistics, LP ("EGL") for portal-to-portal carriage of Toshiba products. The duly executed Transportation Agreement included a Governing Law and Jurisdiction clause providing:

This Agreement shall be governed by and interpreted in accordance with the laws of the State of California, excluding California's conflict of law provisions that direct the application of another jurisdiction's laws. The parties expressly consent to the jurisdiction of the federal and state courts located in Orange County, California in the event of any litigation relating to this Section.

Although the Agreement originally did not cover ocean shipments from the Far East to Mexcio, it was eventually expanded to do so. In 2007, EGL merged with TNT Logistics to form CEVA Logistics, U.S., Inc. and CEVA Freight LLC (collectively, "CEVA"), and CEVA assumed EGL's obligations under the Transportation Agreement. CEVA has an office in Torrance, California, that handles, *inter alia*, business relating to the Agreement.

The events giving rise to this action are scattered across the globe. The plaintiff, Nipponkoa Insurance Co., Ltd., is a Japanese corporation that insures Toshiba against damage and

2

loss of cargo, and now brings a subrogated action for the costs it incurred in paying out on that insurance policy. Nipponkoa's complaint centers on a shipment of laptop computers stolen in 2011. CEVA was transporting the laptops for Toshiba from Shanghai, China to Mexico City, Mexico, pursuant to the Transportation Agreement. The laptops were stolen from a truck in Mexico while under the care of one of CEVA's Mexican subcontractors. Trying this case would likely require testimony from citizens of China, Japan, Mexico, California and Texas. In short, this is a truly international case with no obvious home forum.

Nipponkoa's various theories under which it may recover include CEVA's alleged failure to procure insurance payable to Nipponkoa as required by the Transportation Agreement. Such an omission is presumably attributable to the California office that managed CEVA's business in relation to the Agreement.

(Memorandum and Opinion, D.E. #36 in *NipponKoa Ins. Co., Ltd. v. Ceva Logistics, U.S., Inc., and Ceva Freight, LLC,* 2012 WL 2550278, at *1 (S.D.N.Y. 2012)).[2]

Let's compare then CEVA's assertions of fact with the actual record in this case as set forth in the Errata sheet below:

**ERRATA**

| CEVA's ASSERTIONS OF FACT CONCERNING THIS MATTER | ACTUAL FACTS IN THE RECORD |
|---|---|
| 1. Mexico is an adequate "alternative forum." (CEVA Memorandum of Points and Authorities (hereinafter "Memo"), p. 4). | 1. In fact, the only sworn expert opinion submitted confirms that a Mexico court will not even hear this case if it is dismissed here. (See Ex. 3 to Declaration of Thomas M. Eagan (Declaration of Arturo Arista, ¶¶ 6-7)). |
| 2. "Very little discovery has taken place" (Memo, p. 8). | 2. In fact, over 4 months of discovery had already taken place in this matter at the time that it was transferred, including extensive document requests and requests for admission. See Eagan Decl., ¶ 1. |
| 3. Citizens of California should not be "pressed into jury duty for trial of a case involving a theft that occurred in Mexico" (Memo, p. 9). | 3. In fact, neither Plaintiff nor CEVA has requested a jury; this case will be tried to the Court. |

[2] Judge Scheindlin, presumably as a matter of deference, made it clear that she was not foreclosing this Honorable Court from entertaining any future motions to dismiss. However, her factual findings hardly represented a ringing endorsement of transfer to Mexico.

3

4. Plaintiff's forum choice in this Court "results from blatant forum shopping." (Memo, p. 10).

4. In fact, Plaintiff's forum choice results from the agreed choice of jurisdiction clause.

5. NipponKoa is a Japanese corporation with no apparent connection to California. (Memo, p. 10).

5. In fact, under the law, it is largely the location of NipponKoa's assured, Toshiba America Information Systems, the nominal plaintiff herein, which matters for transfer purposes, and TAIS has its headquarters in the Central District of California (in Orange County) at 9740 Irvine Boulevard, Irvine, CA 92618. In any event, NipponKoa hardly has "no connection" to California; it has a major U.S. affiliated office located in this District at 601 S. Figueroa St., Suite 2100, Los Angeles, CA 90017.

6. "None of the known witnesses are located in California." (Memo, p. 6).

6. In fact, as already found by Judge Scheindlin, the likely witnesses concerning the seminal issue in the case, CEVA's breach of its contract, are located in California.

7. Trial would require the parties to "transport and accommodate every witness for a trial in California." (Memo, p. 7).

7. In fact, since the contract in questions calls for strict liability, the primary witnesses for a trial would come from the United States.

8. "Questions regarding the applicable standard of care may call for the application of Mexican law" (Memo, p. 9).

8. In fact, cargo claims against CEVA are by contract subject to the Carmack Amendment, as discussed *infra*, a strict liability statute, and otherwise subject to California law, "excluding California's conflict of law provisions that direct application of another jurisdiction's laws." Mexican law will thus have no application whatsoever.

9. "NipponKoa's claims focus the security [sic] that CEVA was allegedly obligated to provide and whether the appropriate security was provided during the subject shipment." (Memo, p. 6).

9. In fact, NipponKoa notified CEVA prior to the filing of their motion to dismiss that they were withdrawing from their complaint allegations related to the appropriateness of CEVA's security (see Thomas Eagan emails to James Carbin, Ex. 4 to Eagan Decl., with Proposed Second Amended Complaint).[3]

---

[3] Concurrent with this motion, is a motion filed during the last week by NipponKoa to file the Second Amended Complaint, which went even further and removed the prior negligence claims. (D.E. #59).

4

10. Plaintiff has propounded several sets of discovery on CEVA even though the case had "not yet reached the Scheduling Conference stage" (Memo, p. 8).

10. The discovery in question was served on CEVA in the S.D.N.Y. action after the Scheduling Conference stage.

11. NipponKoa received "at least one prior warning from a District Court judge that New York was not the appropriate forum for claims occurring elsewhere." (Memo, p. 3).

11. Some S.D.N.Y. judges issue Orders to Show Cause concerning a possible transfer if they notice that many of the events in the case in question occurred outside of the S.D.N.Y. This routine order contained no warnings, and in fact was not even supported by CEVA in the case in question, who proceeded to resolve the case in the S.D.N.Y. Nor was the case ever transferred. (Ex. 5 to Eagan Decl.).

## STATEMENT OF FACTS

### A. Facts Concerning the Movement of the Cargo

1.    Plaintiff NipponKoa Insurance Company, Ltd. ("NipponKoa") is an insurance company organized and existing under the laws of Japan, with a principal place of business in Japan. [Amended Complaint, Ex. 1 to Eagan Decl., at ¶ 2].

2.    Plaintiff's assured is Toshiba America Information Systems, Inc. ("TAIS"), a U.S. corporation based in Irvine, California. Lowe Decl., ¶ 1.

3.    NipponKoa asserts a subrogated claim for the loss of a cargo of 3,564 laptop computers owned by Toshiba America Information Systems, Inc. [Amended Complaint, at ¶ 3 and 19].

4.    The laptops were delivered to CEVA in Shanghai, Peoples Republic of China on March 24, 2011, and CEVA agreed to carry them by ocean, rail and truck to the eventual destination of Mexico City, Mexico. [Amended Complaint, at ¶¶ 11-12].

5.    The laptops were in fact carried by vessel from Shanghai to Manzanillo, Mexico and by rail from Manzanillo to Mexico City [Amended Complaint, at ¶ 12].

6.    On April 20, 2011 a truck hired by CEVA delivering the laptops from the railroad terminal in Mexico City to Toshiba's customers was hijacked and the laptops were stolen. [Amended Complaint at ¶ 12].

5

7.     CEVA had arranged for CMA CGM Mexico, S.A. de C.V. ("CMA CGM Mexico") to truck the laptops from the rail yard, and the goods were hijacked while in CMA CGM Mexico's possession, [Nichols Decl. Def. Exhibit 1, Survey Report at p. 3-4, D.E. #56], but still in CEVA's legal possession [Amended Complaint, at ¶ 11-12], and under the TAIS-CEVA contract (Ex. 1 to Declaration of Alan Lowe dated March 20, 2012, Transportation Manager of TAIS ("Lowe Decl."), as discussed in more detail below.

## B. Facts Concerning the TAIS-CEVA Contract

1.     Given the high volume and high value of their shipments, TAIS has transportation contracts with established carriers whose transportation networks cover their market.   These contracts set forth basic terms, including limits of liability, insurance requirements, choice of law, cargo security, and other key requirements, etc. (Lowe Decl., ¶ 2).

2.     TAIS has had a transportation contract in place with Defendant CEVA (and its predecessor company EGL Global Logistics LP) since at least April, 2003. (EGL and TNT Logistics merged in 2007 to form CEVA).  The CEVA office which handles the contract with TAIS is located at 19600 South Western Ave., Torrance, California. Since approximately 2008, TAIS has negotiated rates, routes and other contract details with Mr. Damon Thompson (Global Account Manager) who is located at that CEVA office (and prior to that TAIS dealt with Brian Baker and John McDonald at that office). CEVA and TAIS have been operating under the same basic contract terms and conditions since then for every shipment handled by CEVA for TAIS (with the routes, rates, modes of transport, etc. being updated from time to time). CEVA's version of the basic contract from April, 2003 and still in effect (with the original "Pricing Matrix" from 2003 which has since been replaced), with appendices, is attached as Ex. 1 to the Lowe Decl. ("CEVA Contract").  Bills of lading were still

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

issued for some of those shipments but they would then function as mere receipts. (Lowe Decl., ¶ 3).

3.    A material part of the CEVA Contract is the Minimum Security Guidelines which obligates CEVA, *inter alia*, to name TAIS and its underwriter as "named assureds" on all CEVA insurance policies.   The latest version of these Guidelines, also agreed to by CEVA (and in effect in April 2011) is attached as Ex. 2 to Lowe Decl.  See Lowe Decl., ¶ 4.

4.    Ultimately, TAIS and CEVA expanded the scope of service to involve ocean shipments from the Far East to Mexico, and the terms for this service (which incorporate the 2003 CEVA Contract) are set forth in Attachment 2 to Appendix F, the Sea/Rail Program, pp. CEVA 00091-00092, part of Ex. 1).  (Lowe Decl., ¶ 5).

5.    Although the "Sea/Rail Program" Appendix was apparently never executed by either CEVA or TAIS, both parties operated under its terms.  (Lowe Decl., ¶ 6).

6.    During 2010 and 2011, there were 6 previous claims (ranging from $363 to $15,571) for ocean and other shipments that CEVA carried from the Far East to Mexico for delivery to Toshiba de Mexico.  CEVA consistently paid <u>full value</u> for missing laptops on these claims, thereby confirming that the CEVA Contract applied. Ex. 3 to Lowe Decl. is a spreadsheet of those claims (prepared from TAIS' business records).  (Lowe Decl., ¶ 7).

7.    When this loss occurred, TAIS once again sent a claim to CEVA Logistics in Houston, Texas – just like every other CEVA loss that TAIS had had. (Lowe Decl., Ex. 4).  CEVA never claimed that this loss was not covered under the CEVA Contract.  (Lowe Decl., ¶ 8).

8.    Rather, CEVA's representatives in fact notified Plaintiff's representatives involved in this case that the CEVA Contract did apply, stating: "we refer to the

liability provisions of the attached CEVA/Toshiba Contract," and addressing CEVA's maximum liability "in accordance with the contract."    As they specifically stated therein:

> CEVA have forwarded to us your letter of claim dated 14 October and enclosures and we shall be grateful if you will note their interest on behalf of their goods in transit legal liability insurers.
>
> Our investigations continue and we shall revert as soon as possible but in the meantime we refer to the liability provisions of **the attached CEVA/Toshiba contract**.
>
> *****
>
> Further to our previous exchanges we wish to establish, pending completion of our enquiries and the submission of our recommendations to our principals, the extent of CEVA's maximum liability **in accordance with the contract** sent to Vericlaim.

(Lowe Decl., ¶ 9).  (See Exs. 5 and 6 to Lowe Decl., emphasis added).

9.    Overall, since 2008, CEVA has transported over 5.5 million units for TAIS, which has paid freight of over $84 million.  For shipments to Mexico alone, since 2008 TAIS has paid CEVA roughly $20 million.   CEVA has never once suggested to TAIS that the CEVA Contract did not apply to Mexican shipments, or to any other shipments for that matter.   The CEVA Contract applied to all business between TAIS and CEVA.  (Lowe Decl., ¶ 10).

10.    The CEVA Contract calls for the application of strict liability, see discussion *infra,* in the form of the application of U.S. law, namely The Carmack Amendment, (49 U.S.C. § 14706), regardless of the mode of transport utilized (*See* Lowe Decl., Exh. 1, ¶12).  This is subject only to certain liability limits which may apply.  *Id.,* ¶12.1 and at p. 51 (Note 3).  Any issues not covered by the Carmack Amendment are also subject to U.S. law, namely California law. *Id.,* ¶16.

11.    Prior to this loss, two prior legal actions had been commenced by NipponKoa as subrogees of TAIS against CEVA for shipments carried under the same

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

CEVA Contract.  *See NipponKoa Ins. Co., Ltd. v. Ceva Logistics, U.S., Inc.,* 1:09-cv-01279-RMB (S.D.N.Y.); *NipponKoa Ins. Co., Ltd., v. Ceva Logistics U.S., Inc.,* 1:10-cv-09233-WHP (S.D.N.Y.).  ¶¶ 2-3 (Ex. 5 and Ex. 6 to Declaration of Thomas M. Eagan in Opposition to CEVA's motion).  In both of these prior cases, which involved cargo losses occurring in Orlando, Florida and Miami, respectively, lawsuits were commenced in the Southern District of New York.  In both cases CEVA essentially accepted the S.D.N.Y. as an equally convenient forum to California.  It was given that loosely knit course of dealing that Plaintiff chose to originally file this case as well in the Southern District of New York.

## SUMMARY OF ARGUMENT

The Court can deal summarily with Defendants' motion, which (a) ignores the agreed body of liability law (the Carmack Amendment and California law), (b) ignores the sworn Declaration of a Mexican law expert that a Mexican Court will not hear this case, and (c) largely ignores (barely mentioning) an agreed forum selection agreement for California jurisdiction, in a bid to have a breach of contract action arising under California and U.S. law, entered into between two U.S. companies, and signed by two U.S. citizens, litigated in a foreign country (Mexico).

## ARGUMENT

The test on a motion to dismiss on *forum non conveniens* grounds has been described by the Ninth Circuit as follows:

> 1.    This court has held that "[b]efore dismissing a case for forum non conveniens, a district court must first make a choice of law determination." *Zipfel v. Halliburton Co.,* 832 F.2d 1477, 1482 (9th Cir.1987), *amended on other grounds by* 861 F.2d 565 (9th Cir.1988). However, the choice of law analysis is only determinative when the case involves a United States statute requiring venue in the United States, such as the Jones Act or the Federal Employers' Liability Act. *See Creative Tech.,* 61 F.3d at 700. The Jones Act, 46 U.S.C.App. § 688(a), and the Federal Employers' Liability Act, 45 U.S.C. § 56, "contain special provisions mandating venue in the United States." *Creative Tech.,* 61 F.3d at 700.

The purpose of such a choice of law inquiry in a forum non conveniens analysis is to determine if one of these statutes would apply.

*Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1148 (9th Cir. 2001).

> 2. Such a conclusion "would end the forum *non conveniens* inquiry."

*Lockman Found. v. Evangelical Alliance Mission,* 930 F.2d 764, 771 (9th Cir. 1991).

> 3. [Otherwise] A party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal. *See Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1142-43 (9th Cir.2001). The plaintiff's choice of forum will not be disturbed unless the "private interest" and "public interest" factors strongly favor trial in the foreign country. *See Gates Learjet,* 743 F.2d at 1334. In *Cheng v. Boeing Co.,* 708 F.2d 1406, 1410 (9th Cir.1983), this court noted that "the standard to be applied [to a motion for dismissal on the ground of *forum non conveniens*] is whether ... defendants have made a clear showing of facts which ... establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." (internal quotation marks and citation omitted). *Forum non conveniens* is "an exceptional tool to be employed sparingly,[not a] ... doctrine that compels plaintiffs to choose the optimal forum for their claim." *Ravelo Monegro v. Rosa,* 211 F.3d 509, 514 (9th Cir.2000).

*Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1118 (9th Cir. 2002).

## I.

## THE PARTIES AGREEMENT TO APPLY THE CARMACK AMENDMENT TO THEIR CONTRACT REQUIRES A U.S. FORUM AND THEREFORE ENDS THE FORUM NON CONVENIENS INQUIRY

First, as already noted, legally NipponKoa stands here in the shoes of its assured, Toshiba America Information Systems, (or "TAIS"), headquartered and handling its logistic function out of its primary corporate office in Irvine, California. (Lowe Decl., Ex. 1, ¶14). That is because this is largely a subrogation action. *Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d Cir. 1992); *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d Cir. 1999).

Second, that deference is magnified because in the Transportation

Agreement ("Agreement"), the parties agreed that the terms of the Carmack Amendment[4], would apply to CEVA, stating:

> 12. <u>Carrier Liability.</u>  Carrier assumes the liability of a common carrier consistent with the Carmack Amendment for shortage, loss, damage or delay of cargo from receipt until actual delivery of the cargo to consignee.

(Lowe Decl., Ex. 1, ¶12)

The Carmack Amendment states in pertinent part:

> **(a) General liability.--**
> **(1) Motor carriers and freight forwarders.**--A carrier providing transportation or service subject to jurisdiction…
> *****
> **(d) Civil actions.--**
> **(1) Against delivering carrier.**--A civil action under this section may be brought against a delivering carrier in a district court of the United States or in a State court. Trial, if the action is brought in a district court of the United States is in a judicial district, and if in a State court, is in a State through which the defendant carrier operates.
> **(2) Against carrier responsible for loss.**--A civil action under this section may be brought against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred.
> **(3) Jurisdiction of courts.**--A civil action under this section may be brought in a United States district court or in a State court.
> **(4) Judicial district defined.**--In this section, "judicial district" means--

---

4 The Parties further agreed to a California "Governing law and Jurisdiction" clause to interpret contract issues generally stating

> This Agreement shall be governed by and interpreted in accordance with the laws of the State of California, excluding California's conflict of law provisions that direct the application of another jurisdiction's laws. The parties expressly consent to the jurisdiction of the federal and state courts located in Orange County, California in the event of any litigation relating to this Agreement.

(Ex. 1 to Lowe Decl., ¶ 16). This Court will note that when this case was transferred from the S.D.N.Y. to the C.D. California, the transferring judge did not specify the Orange County Division. Plaintiff has no objection if this Court chooses to transfer the case to that Division.

11

> **(A)** in the case of a United States district court, a judicial district of the United States; and
> **(B)** in the case of a State court, the applicable geographic area over which such court exercises jurisdiction.

49 U.S.C. § 14706.

The Ninth Circuit has expressly held that the Carmack Amendment, at 49 U.S.C. § 14706(d)(1), prohibits foreign jurisdictions handling Carmack claims.:

> [5] One of these inalienable requirements [of the Carmack Amendment] is that the shipper be permitted to sue in certain venues when a dispute arises. Carmack provides that, when suing the delivering carrier, "[a] civil action...may be brought...in a district court of the United States...in a judicial district...through which the defendant carrier operates." 49 U.S.C. § 14706(d)(1). Or, when suing the carrier alleged to have caused the damage, "[a] civil action...may be brought...in the judicial district in which such loss or damage is alleged to have occurred." *Id.* § 14706(d)(2). These provisions assure the shipper a choice of forums as plaintiff.
> * * * *
> The Supreme Court reversed *Regal-Beloit* on other grounds, *see Kawasaki,* 130 S. Ct. 2433, but indicated in dicta that our holding on forum selection clauses was correct: "[I]t can be assumed that if Carmack's terms apply to the bills of lading here, the cargo owners would have a substantial argument that the Tokyo forum-selection clause in the bills is pre-empted by Carmack's venue provisions," *id.* at 2441-42.

*Smallwood v. Allied Van Lines, Inc.,* 660 F.3d 115*,* at *1121-22 and n. 7 (9th Cir. 2011).

Here, CEVA cannot dispute that it runs routes in this District, since it has two major distribution centers here, 19600 South Western Avenue, Torrance, California and 18120 Bishop Avenue, Carson, California. CEVA Worldwide Directory (2012): http://www.cevalogistics.com/en-US/pages/WorldwideDirectory.aspx. So this District is a proper forum.

## II.

## MEXICO IS NOT AN ADEQUATE ALTERNATIVE FORUM FOR THIS ACTION

An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy. *See Piper,* 454 U.S. at 254 n. 22, 102 S.Ct.

12

252; *Leetsch v. Freedman,* 260 F.3d 1100, 1103 (9th Cir.2001) ("The foreign court's jurisdiction over the case and competency to decide the legal questions involved will also be considered. We make the determination of adequacy on a case by case basis, with the party moving for dismissal bearing the burden of proof.") (citation omitted).

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1225 (9th Cir. 2011).  *Cf. Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) ("A foreign forum is available when the *entire case and all parties* can come within the jurisdiction of that forum").

While CEVA may be amenable to process here, as set forth in detail in the accompanying declaration of one of Mexico's leading Mexican transportation lawyers Arturo Arista, not only is Mexico not a preferred forum for this action, **it is not an alternative forum at all, as a Mexican court will simply not hear this case and thus will not provide a remedy**.  (Ex. 3 to Eagan Decl., Declaration of Arturo Arista dated March 16, 2012 at ¶¶ 6-7).  As Attorney Arista explains:

> 6.   In my opinion, if the transportation agreement mentioned in point five is applicable, a Mexican Court would reject jurisdiction over the case since other jurisdictions are preferred over Mexico as per the Mexican procedural commercial provisions.  The reasons are as follows.
>
> 7.  Clause 16 of the Transportation Agreement states…[5]
>
> *****
>
> Articles 1104, 1105 and 1106 of the Commercial Code must be construed in order of appearance, as per established in Mexican case law (Court precedent number 269430).  From the contents of these articles and the mentioned precedent, other jurisdictions would be preferred in the present case over Mexican Courts based on the following:
>
> a)   It could still be disputed if an express submission to a foreign jurisdiction took place in the Transportation Agreement, which if sustained

---

[5] Attorney Arista quotes here the governing law and jurisdiction clause of the contract in full, as already set forth in this memorandum at footnote 4.

by a court, would result in the dismissal of the case from such court.

b) The following rule in order of hierarchy (meaning Paragraph 1 of article 1104) gives jurisdiction to the courts of the domicile named in the Transportation Agreement by the defendants, which are not located within Mexican territory.

c) Although it could be disputed that the place of fulfillment of the agreement per paragraph II of article 1104 was located in Mexico, the prior rules exclude Mexican courts from jurisdiction to hear this case.

Based on the above, it is my opinion that a Mexican Court would be obliged to dismiss a case relating to the Transportation Agreement since other jurisdictions are preferred over Mexico as per the Mexican procedural commercial provisions.

(Ex. 3 to Eagan Decl., Arista Decl., ¶¶ 5-7).

The case would also likely be time-barred in Mexico.  Although not discussed at all in CEVA's motion, CEVA may be permitted to assert the application of its ocean bill of lading in Mexico, which contains a 9 month time to sue clause. Plaintiff contests that such bill of lading operates as a contract here at all.  Nonetheless, as a precaution, since the shipment arrived in Mexico on or about April 20, 2011, any new action NipponKoa were to file in Mexico now would (arguably) face a possible time bar defense.  "'The danger that the statute of limitations might serve to bar an action is one of the primary reasons for the limitation on the court's discretion with respect to the application of the doctrine of *forum non conveniens*.'  *Paper Operations*, 513 F.2d at 672-73."  *Carijano*, 643 F.3d, 1235.

## III.

## THE PRIVATE INTEREST FACTORS HERE
## ARE IN BALANCE, WITH WITNESSES SCATTERED WORLDWIDE

The Court should consider seven private factors:

(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling

14

witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Lueck,* 236 F.3d at 1145(internal quotation marks and citations omitted).

*Boston Telecomms. Group, Inc. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009).

## A. The Residence of the Parties and the Witnesses

Since NipponKoa sues here largely in a representative capacity, asserting subrogated claims derivative of its Californian assured's rights, *see,* e.g., *Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 522-524 (1947)**,** it is TAIS' California domicile must be weighed in the calculations.[6]  *United States Merch. & Shippers' Ins. Co.  v. A/S Den Norske Afrika og Australie Line*, 65 F.2d 392, 393-394 (2d Cir. 1933) (court crediting assured's domicile over insurer's domicile for purpose of *forum non conveniens* analysis).  *But see Alcoa S.S. Co., Inc. v. M/V Nordic Regent,* 654 F.2d 147, 157, n. 14 (2d. Cir. 1980) (en banc) (court in *dicta* setting forth a possible re-interpretation of *U.S. Merchants*).

Thus, the Plaintiff's choice of forum here is entitled to very substantial deference:

It is important to note in this regard that all of the named plaintiffs are residents of the United States. "[T]he Supreme Court has clearly and unambiguously established that courts should offer greater deference to the selection of a U.S. forum by U.S. resident plaintiffs when evaluating a motion to dismiss *for forum non conveniens.*" *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 102 (2d Cir.2000). See also *DiRienzo v. Philip Servs. Corp.,* 232 F.3d 49, 62 (2d Cir.2000) ("We recently reaffirmed this holding, by noting that *Guidi* illustrates that a plaintiff's U.S. citizenship and residence is entitled to consideration in favor of retaining jurisdiction" (internal citations omitted)). Cf. *Piper,* 454 U.S. at 255-56 ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient.

---

[6] In addition, the Plaintiff itself, NipponKoa Insurance Company, Ltd., has one of its major affiliated U.S. offices located in <u>Los Angeles,</u> and thus having its litigation routinely heard in that city, where its affiliated American employees live and work, and where its Japanese executives visit, is more convenient and makes logical sense. *See* Corporate Information – Overseas Group Network – Representative Offices (2009), <u>http://www.nipponkoa.co.jp/english/c_profile/corporate_information. pdf.</u>

15

*Deirmenjian v. Deutsche Bank, A.G.*, 2006 WL 4749756, at *12 (C.D. Cal. 2006).

In fact, when the Defendant is also a resident in the chosen forum, that factor further weighs in favor of a United States forum. *See Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). The reason is self-evident:

> Concerns about forum shopping, while appropriately considered in the *forum non conveniens* analysis, are muted in a case such as this where Plaintiffs' chosen forum is both the defendant's home jurisdiction, and a forum with a strong connection to the subject matter of the case. *See Ravelo Monegro*, 211 F.3d at 513–14 (distinguishing *Piper*, where dismissal was granted, by noting that "plaintiffs' chosen forum is more than merely the American defendants' home forum. It is also a forum with a substantial relation to the action"); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 155–56 (2d Cir.2005) (finding that "substantial deference" is appropriate when a plaintiff has sued a defendant in its home forum to obtain jurisdiction over the defendant…

*Carijano*, 643 F.3d at 1229. When, as here, both parties are U.S. citizens, a decision to maintain the case has been held to "serve the substantial public interest." *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 430 (1st Cir. 1991).

Thus, where the tradeoff in convenience is, as here, between moving the parties for a trial – or merely moving some witnesses – the convenience of the parties prevails. As explained in *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006):

> On balance, the economics of bringing a few witnesses from the [foreign country] to Washington will be less costly than moving the trial apparatus, including both parties and witnesses, from all over the United States to the [foreign country].

This case is thus the polar opposite of the only three cargo cases cited by CEVA – where the Court transferred cases to Mexico. In every one of those cases, one or more of the parties were Mexican. *See Extractora De Productos Vegetale Y Animales S.A. v. M/V Sonia M.*, 1991 WL 267918, 1991 A.M.C. 2953, 2953-54 (S.D.N.Y. 1991) (case by Mexican insurer against Mexican shipowner concerning shipment to Mexico, carried under Mexican jurisdiction clause); *Seguros Comercial*

16

*Americas S.A. de C.V. v. Am. President Lines, Ltd.*, 910 F. Supp. 1235, 1246, 1996 A.M.C. 1441, 1454 (S.D. Tex. 1995) *vacated in part*, 105 F.3d 198 (5th Cir. 1996) (same Mexican insurer suing on shipment to Mexico to be decided under "Mexican Regulations"); *Industria Fotografica Interamericana S.A. de C.V. v. M.V. Jalisco*, 903 F. Supp. 18, 1996 A.M.C. 769, 769-70 (S.D. Tex. 1995) (Mexican insurer suing Mexican flag ship concerning shipment from Mexico under contract containing Mexican forum selection option).

## B. The Forum's Convenience to the Litigants

The Plaintiff here was the party who requested the transfer of this case from New York to California.  In that regard, the law is clear: "When a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient." *Carijano*, 643 F.3d at 1227.  Moreover, all of the TAIS witnesses with knowledge of the contract claims are in this District.  Lowe Decl., ¶¶ 1-3.

As for the Defendant, CEVA, its witnesses knowledgeable about the contract claims are also in this District.  Lowe Decl., ¶ 3.  And obviously a party "cannot be heard to complain about inconveniences resulting from an agreement [here for litigation in California] it freely entered into." *Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F. Supp. 71, 74 (S.D.N.Y. 1978).

## C. Ease of Access to Evidence

Most of the critical documents here, including the most critical one of all – the 52-page CEVA Contract – are in the English language.  A few liability documents may be in Spanish, but, overall it cannot be disputed that many thousands of dollars in translation costs will be saved by litigating this case in the United States. *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir. 1993) ("significant [translation] cost to the parties and delay to the court…militates strongly in favor of…a more appropriate forum").

17

To the extent the location of documents is a factor, the only truly significant cargo documents in this case – needed to establish the good order and condition of the cargo upon shipment are located in Shanghai, China.  In contrast, again, any documents in Mexico will certainly be *de minimus*.

### D. <u>The Availability of Compulsory Process for Unwilling Witnesses</u>

Not surprisingly, the witnesses highlighted by CEVA on the subject of liability are almost all based in Mexico.  But, when it comes to witnesses; the Ninth Circuit has made its position known – the key is quality, not quantity:

> Furthermore, the district court improperly focused on the number of witnesses in each location. Instead, the court should have examined the materiality and importance of the anticipated witnesses' testimony and then determined their accessibility and convenience to the forum. *See La Seguridad v. Transytur Line*, 707 F.2d at 1308-09; *Thomson & McKinnon v. Minyard*, 291 F.Supp. 573, 576 (S.D.N.Y.1968).

*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984).

<u>In fact, now that this case has been narrowed down to a mere contract dispute, the testimony of Mexican liability witnesses is unlikely to even be necessary.</u> The contract claim is subject to the Carmack Amendment, 49 U.S.C. § 14706, which essentially applies a strict liability standard for trucking losses.  *Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964) (only permitted Carmack defenses are act of God, act of public enemy, act of shipper, act of public authority, or inherent vice of the goods).

In addition, CEVA's description of the witnesses that it asserts will need to testify, is entirely inadequate:

> Moreover, "[t]he party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover" to avoid a judicial determination of which forum is most convenient based merely on which party can present a longer list of possible witnesses. *Jenkins v. Wilson Freight Forwarding Co.*, 104 F.Supp. 422, 424 (S.D.N.Y.1952). Prosegur has provided a witness list containing only names

18

and either job titles or roles in the robbery. (Servidio Decl. ¶ 3.) Defendant has not established that these witnesses can provide testimony relevant to the claims in this case. As such, I find that Prosegur has not demonstrated that the location of several witnesses in Paraguay strongly favors dismissal.

*HSBC USA, Inc. v. Prosegur Paraguay, S.A.*, 2004 WL 2210283, at *4 (S.D.N.Y. 2004).[7]  *See also Dole Food Co., Inc.*, 303 F.3d, 1118.

No witnesses here have declined to travel to California to testify. [8]  Even if they had, and even if a witness from Mexico is needed, compelling testimony here from Mexico is not a problem; (Arista Decl., ¶ 9); *O'Donnell v. Club Mediterranee S.A.*, 2008 WL 794975, at *13-14 (E.D.N.Y. 2008) (also noting that where foreign witness testimony does not relate to a threshold issue, compelling live testimony is not a critical factor).

### E. The Cost for Cooperative Witnesses to Attend Trial

Now that this is narrowed to a contract dispute, while there are potentially knowledgeable witnesses located throughout the world (*see* Eagan Decl., Ex. 7, Plaintiff's Initial Disclosures), the most significant cooperating witnesses should include the following:

| California/Houston | Japan/China | Mexico |
|---|---|---|
| a) Alan Lowe (TAIS) | a) Representative | None, now that |

---

[7]  Moreover, at least on motions to transfer, witness details submitted for the first time in **reply papers** are **not** to be considered by the Court determining the motion. *Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*, 2007 WL 163111, at *2 (S.D.N.Y. 2007).
[8]  Indeed, given that the Mexican trucker, the security company and survey firms engaged here appear to be regular vendors or sub-vendors of CEVA, or of NipponKoa, with ongoing business relationships, normal cooperation in discovery and even travel to the United States can certainly be expected.
[9]  Oddly, CEVA, in its Initial Disclosure, listed the location of all of their witnesses as care of their defense firm in New Jersey, thereby failing to provide us with the required information concerning their addresses in time for the filing of this Opposition. (Eagan Decl., Ex. 8).  Transportation companies (such as CEVA), who arrange low cost transportation as a business, have been held, at least in the context of domestic transfer cases, to have a particularly low burden in arranging for witnesses to travel to litigate.  *Miller v. Consol. Rail Corp.*, 196 F.R.D. 22, 26 (E.D. Pa. 2000).  *See also Kielczynski v. Consol. Rail Corp.*, 837 F. Supp. 687, 689 (E.D. Pa. 1993); Charles A.

19

Irvine, California

b) Patricia Overton (TAIS)
Irvine, California
Subjects:
- Prior CEVA Claims;
- CEVA Contractual Agreements;
- Insurance payments;
- Quantum of loss.

c) Damon Thompson (CEVA)
19600 Southwestern Avenue
Torrance, California
Subjects:
- CEVA Contractual Agreements.

d) Maria Thompson
David Oldham
Shawn Colvin

All believed to be located[9] at:
CEVA
15350 Vickery Drive
Houston, TX  77032
Subjects:
- Prior CEVA Claims;
- CEVA Contractual Agreements.

e) Yohei Kaneko
NipponKoa Management Corp.
Los Angeles, California
Subjects:
- Insurance payment.

f) Joseph Stevens
Vericlaim Inc.

NipponKoa Insurance Co., Ltd.
Tokyo, Japan.
Subjects:
- Insurance payment.

b) Representative
Compal Information Technology Co.
Shanghai, China
Subjects:
- Warehouse documentation procedures;
- Warehouse inspection procedures.

this matter has been narrowed down to being a mere contract dispute.

---

Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3851 (3d ed. 2011).  The same rule should apply to foreign *forum non conveniens* motions involving international transportation companies with offices worldwide.  International travel for their employees is routine.  Indeed, CEVA's network has 1,200 locations in "over 170 countries."  CEVA's Global site: where we operate (2012). http://www.cevalogistics.com/en-us/whereweoperate/Pages/__default.aspx.  CEVA cannot dispute that it runs routes in this District, since it has two major distribution centers here, 19600 South Western Avenue, Torrance, California and 18120 Bishop Avenue, Carson, California.  CEVA Worldwide Directory (2012): http://www.cevalogistics.com/en-US/pages/WorldwideDirectory.aspx.  Moreover, CEVA is a multi-billion dollar company with more than enough "resources" to pay for any needed discovery costs. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 107 (2d Cir. 2000).

20

Los Angeles, California
Subjects:
- Insurance payment.

The contract issues in this case will clearly be the most hotly contested and outcome determinative.

### F. Enforceability of Any Judgment

No evidence has been proffered by either side as to the practical issues involved in converting a Mexican judgment against CEVA into a United States judgment, so that "counsels" against the motion. *Tuazon*, 433 F.3d at 1181. In any event, a U.S. judgment would surely be less expensive and less cumbersome to enforce, and lawyers would only have to be retained in one country, instead of two.

### G. Other Practical Problems

Contrary to the impression created in CEVA's Memorandum, discovery in the Southern District of New York action had progressed substantially in accordance with U.S. law, to the point where initial disclosures were exchanged, extensive documents were exchanged, and three sets of Requests to Admit were served and answered. Eagan Decl., ¶ 1). While CEVA's discovery responses were clearly deficient (a motion to compel was pending when the case was transferred, and the involved Magistrate Judge made it a point to ensure that the issue of CEVA's conduct was to be preserved in this Court (Ex. 9 to Eagan Decl., Order dated July 6, 2012), the fact is that CEVA has already received the benefit of U.S. discovery procedures in connection with the claims at issue. Indeed, CEVA served an 80 paragraph document request upon Plaintiff and in response Plaintiff produced hundreds of pages of documents, and CEVA also served deposition notices (although CEVA had not taken any depositions). The degree to which discovery has proceeded is a key factor in a *forum non conveniens* analysis. *Gates Learjet Corp.*, 743 F.2d at 1335.

In contrast, if this case is sent to Mexico, discovery under Mexican

21

procedures will have to be commenced anew and all of the expense involved in the U.S. discovery will be largely for naught since, for example, responses to requests to admit in this country would hardly be usable under Mexican law.

### H. CEVA's Asserted Need to Implead Third-Parties <u>Under Separate Contracts Does Not Compel Transfer</u>

The issue of impleading third parties is normally "secondary to the initial inquiry about the locus of events and evidence." *Palacios v. The Coca-Cola Co.*, 757 F. Supp. 2d 347, 362 (S.D.N.Y. 2010).

Moreover, where, as here, "defendants primary third party claims are for contractual indemnification," *O'Donnell*, 2008 WL 794975, at *15, the issue has little weight:

> Because the legal and factual issues in the main suit and those in potential third party actions differ, there is little likelihood that defendants would be prejudiced by inconsistent verdicts. For the same reasons, and because the suits would entail little or no duplication of proof, no greater judicial convenience would be achieved by trial in a single forum.

*See Reid-Walen v. Hansen*, 933 F.2d 1390, 1398 (8th Cir. 1991) (defendants' inability to implead third party did not weigh in favor of dismissal); *see also Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 343-44 (8th Cir. 1983)(*citing Olympic Corp. v. Societe Generale*, 462 F.2d 376, 379 (2d Cir. 1972)). *Cf. Boston Telecomms. Group, Inc.*, 588 F.3d at 1211("the fact that Wood may be unable to implead alleged joint tortfeasors in California is by no means determinative…").

Under our facts, this factor is entitled to even less weight. CEVA can first resolve its strict liability here under the Carmack Amendment, and then if necessary, later seek whatever further indemnification it may be entitled to under separate contracts with its downstream sub-contractors in due course. As discussed in *HSBC USA, Inc.*, 2004 WL, at *4:

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Prosegur contends that "proceeding with the case in New York will preclude Prosegur from bringing appropriate third-party actions against others in Paraguay with respect to the armed robbery." (Pros. Motion to Dismiss p. 11.) This argument has failed before in this Circuit. *See TeeVee Toons,* 2002 WL 498627, at *9. Nothing prevents Prosegur from initiating an action in Paraguay in reliance on a judicial determination in New York. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. BP Amoco, P.L.C.,* No. 03 Civ. 0200, 2003 WL 21180421, at *8 (S.D.N.Y. May 20, 2003) (noting that courts have accorded little weight to the efficiency that might be gained by having all related litigation in a single forum) (citing *Overseas Programming Cos. v. Cinematographische Commerz-Anstalt,* 684 F.2d 232, 235 (2d Cir.1982); *MasterCard Int'l Inc. v. Argencard Sociedad Anomina,* No. 01 Civ. 3027, 2002 WL 432379, at *8 (S.D.N.Y. Mar. 20, 2002).

In fact, the two principal sub-contractors that CEVA might implead do not have Mexican roots, and no evidence at all has been offered by CEVA as to why these third-party Defendants cannot in fact be added to this case. The security company, Prosegur, Inc., is the world's second largest security company, with 600 offices. http://www.prosegur.com/COMEN/AcercadeProsegur/index.htm. CMA-CGM, the parent of CMA-CGM Mexico, S.A. de C.V., is French-based, with 650 offices worldwide, including an office in Long Beach, California. *See generally* http://www.cma-cgm.com/shipping/agency/USA-95.aspx. Indeed, it would appear that CMA-CGM cannot be sued in Mexico either; its standard bill of lading requires lawsuits to be brought in Marseille, France, CMA-CGM; B/L Clauses (2006) http://www.cma-cgm.com/ProductsServices/ContainerShipping/ShippingGuide/BLClauses.aspx at Clause 30(2).

## IV.

## THE PUBLIC INTEREST FACTORS HERE WEIGH STRONGLY IN FAVOR OF A UNITED STATES FORUM

We turn now to the five public interest factors: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute

23

unrelated to a particular forum." *Tuazon,* 433 F.3d at 1181, citing *Lueck,* 236 F.3d at 1147.

*Boston Telecomms. Group, Inc.*, 588 F.3d at 1211.

Consider:

a) Since this contract case involves interpretation of a California contract, and none of the parties here are Mexican, there is no localized interest in this controversy in Mexico.  In contrast, there is considerable interest in the United States since both CEVA and their original contracting party, TAIS, whose insurance loss ratio will be affected by the outcome of this case, are located in this country.  TAIS and CEVA, are United States companies, based in Southern California and Houston, Texas respectively. "California has an interest in protecting corporations based in California."  *Dole Food Co., Inc.*, 303 F.3d at 1119.  CEVA is registered to do business in this state.  Ex. 10 to Eagan Decl.

b) As discussed above, United States (the Carmack Amendment) and California law is to be applied.  This Court is fully familiar with those laws; a Mexican Court is not.

c) Contrary to CEVA's assertion, no party here has requested a jury (and few parties do request them, or if requested actually require them at the time of trial, in cargo cases).

d) Court congestion will not be affected by this case, as cargo claims routinely are resolved with less than six months of discovery, settle 99% of the time, and can be tried in 1-2 days.  *See Altmann v. Republic of Austria*, 317 F.3d 954, 974 (9th Cir. 2002) *opinion amended on denial of reh'g*, 327 F.3d 1246 (9th Cir. 2003) and *aff'd on other grounds*, 541 U.S. 677 (2004)(where case presents "discrete issues," it

24

is unlikely to create congestion in the courts).   The likelihood of settlement is a recognized factor that militates against transfer. *In re Hanger Orthopedic Group, Inc., Securities Litigation,* 418 F. Supp. 2d 164, 170 (E.D.N.Y. 2006) (noting that class action cases also routinely settle).   In contrast, just getting to trial in Mexico (assuming the case were accepted) would take 2-3 years (including appeal), so presumably their Courts are significantly more congested than ours.[10]   (Arista Decl., ¶ 8).

e) Other costs of resolving the suit would include the complete re-commencing of discovery in Mexico, wasting all of the work done here under U.S. discovery and evidentiary rules.

Thus, because the contract in question expressly provides that the laws of the United States should apply, the public interest factors favor retention of this case.

## CONCLUSION

Defendant's Motion to Dismiss should be denied.

Dated:  Rye, New York
      July 31, 2012

PACHULSKI STANG ZIEHL & JONES LLP
      and
MALOOF BROWNE & EAGAN LLC


By: */s/ David T. Maloof*
    David T. Maloof (*pro hac vice*)
    Thomas M. Eagan (*pro hac vice*)
    *Attorneys for Plaintiff NipponKoa Insurance Company, Ltd.*

F:\WP-DOCS\1415.86\PLEADINGS - C.D. Cal. 12cv5801\073112 Plf Memo in Opposition to Def Motion to Dismiss on Grounds Non Conveniens.doc

---

[10] On balance, however, few courts on scarce records similar to this one are prepared to make "comparative assessments of relative court congestion'" within foreign countries without more hard data or studies. *Dole Food Co., Inc.*, 303 F.3d at 1120.

25

**PROOF OF SERVICE**

STATE OF NEW YORK          )
                                              )
COUNTY OF WESTCHESTER     )

     I, David T. Maloof, am employed in the town of Rye and county of Westchester, State of New York.  I am over the age of 18 and not a party to the within action; my business address is 411 Theodore Fremd Ave., Suite 190, Rye New York 10580.

     On July 31, 2012, I caused to be served the Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss on the Grounds of *Forum Non Conveniens*, as follows:

*See Attached Service List*

☑ (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Rye, New York, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address.

☑ (BY NOTICE OF ELECTRONIC FILING) I caused to be served the above-described document by means of electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, for parties and/or counsel who are registered ECF Users.

☐ (BY FAX) I caused to be transmitted the above-described document by facsimile machine to the fax number(s) as shown.  The transmission was reported as complete and without error.  (Service by Facsimile Transmission to those parties on the attached List with fax numbers indicated.)

☐ (BY PERSONAL SERVICE) By causing to be delivered by hand to the offices of the addressee(s).

☐ (BY OVERNIGHT DELIVERY) By sending by                     to the addressee(s) as indicated on the attached list.

Executed on July 31, 2012, in Rye, New York.


                    */s/ David T. Maloof*
                     David T. Maloof

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**SERVICE LIST**

2:12-cv-05801-CAS-AGR Notice has been electronically mailed to:

David T Maloof     dmaloof@maloofandbrowne.com, litsupport@maloofandbrowne.com, paralegals@maloofandbrowne.com

Thomas M Eagan     teagan@maloofandbrowne.com

Katherine L Nichols     knichols@duanemorris.com

Patrick Ryan McElduff     PRMcelduff@duanemorris.com

2:12-cv-05801-CAS-AGR Notice has been delivered by First Class U.S. Mail or by other means BY THE FILER to :

James E Mahoney
Pachulski Stang Ziehl and Jones LLP
10100 Santa Monica Boulevard 13th Floor
Los Angeles, CA 90067-4003

James W. Carbin
Duane Morris
744 Broad Street, Suite 1200
Newark, NJ 07102-3889

27

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS