# FILE COPY

## TRANSPORTATION AGREEMENT

THIS AGREEMENT is made on June 1, 2003 ("Effective Date"), by and between Toshiba America Information Systems, Inc., a California corporation, with its principal place of business located at 9740 Irvine Boulevard, Irvine, California 92618 ("TAIS"), and EGL Eagle Global Logistics, LP, a limited partnership, with its principal place of business located at 15350 Vickery Drive, Houston, Texas 77032 ("Carrier").

### RECITALS

WHEREAS, TAIS wishes to tender cargo to Carrier, at various times, for Carrier to transport to certain locations pursuant to the terms of this Agreement; and

WHEREAS, TAIS desires to enter into this Agreement to fulfill its specific needs as stated herein including, but not limited to, those set forth in Section Nos. 4 and 6 herein below; and

WHEREAS, Carrier wishes to perform the transportation services as set forth in this Agreement including, but not limited to, the transport by air or motor vehicle, safely, with reasonable dispatch and without delay, as and when requested by TAIS, all cargo tendered to it by TAIS or its agent, and upon the following terms and conditions, as may be revised from time to time and agreed to by TAIS and Carrier.

### AGREEMENT

NOW THEREFORE, in consideration of the mutual promises, covenants and recitals contained in this Agreement, the Parties agree as follows:

1.    Term. The term of this Agreement shall commence on the Effective Date set forth above, and shall continue for a period of one (1) year (the "Initial Term"). Thereafter, the Agreement shall automatically renew for succeeding terms of one (1) year each, unless terminated earlier in accordance with the provisions herein. Nothing in this Agreement shall be interpreted as requiring either party to renew or extend this Agreement.

2.    Termination.

2.1    Either party may terminate this Agreement without cause at any time upon thirty (30) calendar days prior written notice of termination in accordance with the notice provisions of Section 14.

2.2    If an Event of Default (as hereinafter defined) by either party shall occur, the other party may give to such defaulting party written notice of such default, and if such defaulting party does not adequately cure such default within thirty (30) days after the date of said notice, this Agreement may be terminated at the option of the non-defaulting party by written notice to the defaulting party.

## CONFIDENTIAL

## EXHIBIT 1

CEVA000035

2.3     Each of the following constitutes an Event of Default under this Agreement: (a) if a party attempts to assign its rights or delegate its obligations hereunder without obtaining the other party's consent; (b) if a party disposes of its property for the benefit of creditors; (c) if a party is voluntarily or involuntarily declared to be bankrupt; (d) if a party becomes insolvent; or (e) if a party breaches any of its material obligations under this Agreement.

2.4     Upon the termination of this Agreement for any reason, each party shall be released from all obligations and liabilities to the other occurring or arising *after* the date of termination, except the obligations for payment and indemnification specifically set forth in this Agreement. The expiration or termination of this Agreement shall not relieve Carrier or TAIS from any liability arising from any breach of this Agreement. Carrier agrees to maintain this Agreement in its files and to supply it to TAIS or its assigned representative, upon request, for a period of three (3) years after the termination, along with any and all documents concerning or related to TAIS' cargo.

3.     Rates and Charges.  TAIS shall pay Carrier for the services provided pursuant to this Agreement at the rates set forth in Appendix A, attached hereto and made a part hereof. TAIS shall make all payments due hereunder within thirty (30) days of receipt of Carrier's invoice, provided that failure to do so shall not result in loss of TAIS' discount. If TAIS establishes a payment history averaging 15 days or less from date of invoice receipt  for a consecutive 60 day period rates will be decreased by $.01/pound (domestic) and/or $.02/Kilogram (International). Payment for each International and Domestic business segment, as identified in the attached appendices, will be calculated separately. In the event that the TAIS average payment history rises above 15 days for 60 consecutive days the rates will return to those contracted for in Appendix A. Any discrepancy in the application of rates and charges under the terms of this Agreement must be addressed in a claim filed by either party within one (1) year of the date of invoice. Rates shown in Appendix A will applicable to all shipments including, but not limited to, collect, prepaid and third party shipments. Carrier shall charge TAIS only for the services actually rendered regardless of the services TAIS requested on the information set forth on any Bill of Lading. Upon TAIS' request for a refund and/or rate reduction related to a Carrier-caused service delay, Carrier shall immediately make such refund and/or reduction.

4.     No Rate Increases.  TAIS has a need to stabilize rates for each term of this Agreement. During the Initial Term of this Agreement, Carrier shall not make any rate increases over those in effect and set forth on Appendix A as of the Effective Date of this Agreement, and Carrier waives its rights, if any, to charge any and all rate increases otherwise permissible. In the event Carrier incurs fuel charges or other unforeseeable cost increases above and beyond the scope of normal operating expenses, Carrier must discuss and reach an agreement with TAIS, on a case-by-case basis, on any price variances before Carrier may charge TAIS any rate above and beyond that set forth on Appendix A.

2

CEVA000036

5.    Additional Charges.  Accessorial services performed by Carrier in connection with the services provided pursuant to this Agreement are included in the negotiated rates set forth on Appendix A.  CARRIER SHALL NOT BE ENTITLED TO ANY FEES, COSTS OR PAYMENTS UNDER THIS AGREEMENT OTHER THAN THE COMPENSATION PAYABLE UNDER SECTION 3 OF THIS AGREEMENT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, UNDER NO CIRCUMSTANCES SHALL CARRIER BE ENTITLED TO RECEIVE ANY OTHER PAYMENTS OR BENEFITS WHATSOEVER WHETHER BASED ON TERMINATION INDEMNITIES, LOST PROFITS, LOSS OF GOODWILL, CONSEQUENTIAL DAMAGES, OR OTHERWISE. TAIS must approve in writing any additional charges on a case-by-case basis prior to Carrier rendering the services related to such additional charges.

6.    Scope of Service.  Carrier shall provide quality transportation services from TAIS' distribution centers, as more specifically named in Appendix A or reissues thereof, as requested by TAIS to points served by the Carrier or its assignees.  At no time does Carrier take ownership of any cargo TAIS or its designee tenders to Carrier for transportation.  Ownership will remain with TAIS at all times with the Carrier being responsible for the safe and timely movement to the contracted destination. Carrier, on behalf of its agents, employees, officers or creditors, acknowledges that it has no right to place a lien or willingly hold the cargo TAIS or its designee tenders to it by TAIS.  If Carrier or its agents or independent contractors deviate from shipping cargo to a contracted destination without TAIS' prior authorization, such conduct shall be considered a breach of this Agreement and a service failure.  Additional services may, from time to time, be instituted upon a written amendment of this Agreement in the manner designated herein.  As a material part of Carrier's service, Carrier shall comply with and shall not deviate from the Minimum Security Guidelines annexed hereto as Appendix B.  Carrier shall submit to TAIS its public quarterly financial reports.

7.    Import and Export Controls.  This Agreement involves products and/or technical data that may be controlled under the U.S. Import and/or Export Administration Regulations and related laws, rules and regulations, and may be subject to the approval of the U.S. Department of Commerce prior to import or export.  Any import or export, directly or indirectly, in contravention of the U.S. Import and/or Export Administration Regulations is prohibited. Carrier shall be the broker of record for all services provided to TAIS that relate to the import and/or export of TAIS' cargo.  Carrier agrees to fully comply with and be responsible for understanding all import and export laws, regulations and rules now in effect or that may be issued from time to time by the Office of Export Administration of the U.S. Department of Commerce or any other governmental authority that has jurisdiction relating to import and export laws for the countries specifically listed in this Agreement and all countries in which Carrier does or intends to do business. Additionally, Carrier shall be responsible for compliance with all laws, rules, regulations and procedures relating in any way to the services provided to TAIS.

8.    Assignment.  This Agreement cannot be assigned by either party without the prior written consent of the other, which consent shall not be unreasonably withheld.

CEVA000037

9.     Compliance with Laws and Regulations.  Carrier, at its cost and expense, shall
provide motor and/or air vehicles, equipment and insurance thereon for use in the
services to be performed hereunder, and all such vehicles, equipment and insurance shall
be in compliance with all applicable laws and regulations.  Carrier shall maintain the
vehicles and equipment in good and working condition, both as to operation and
appearance.  Carrier, at its cost and expense, shall employ in operation of such vehicles
and equipment qualified personnel, and shall procure and maintain such insurance,
licenses and permits as required by applicable law with respect to transportation services.

10.     Independent Contractor.  In Carrier's performance of the services and other
obligations under this Agreement, Carrier is at all times acting and performing as an
independent contractor to TAIS.  Carrier shall not represent that it is, nor shall it be
deemed as, or be construed as TAIS' agent.  Carrier shall have exclusive control and
direction of the individuals operating motor vehicles or otherwise engaged in such
services.  Except as otherwise provided herein, TAIS shall not have or exercise any
control or direction over the method, manner or means by which Carrier performs its
obligations or renders or performs the services provided for in this Agreement.  Carrier
assumes full responsibility for the payment of local, state and federal payroll taxes and
contributions or taxes for, among other things, unemployment insurance, pensions,
welfare benefits, workers' compensation, social security and other related protection with
the respect to the individuals engaged in the performance of the services that are the
subject of this Agreement. Additionally, subject to the limitations of liability contained in
Section 12, Carrier shall be legally responsible for the negligent acts or omissions or
willful misconduct of its agents, employees or independent contractors in the
performance of this Agreement, and Carrier shall defend, indemnify and hold TAIS
harmless from and against all third party claims, lawsuits or liabilities (including
attorneys' fees and costs) arising therefrom, excluding third party claims based on loss,
damage or delay of any shipment.   Carrier shall insure that any of its agents,
subcontractors or independent contractors agree to be liable to TAIS to the same extent as
Carrier under this Agreement.  Under no circumstances shall Carrier have the right to act
or make any commitment of any kind to any third party on behalf of TAIS, except on the
express prior authorization of an authorized representative of TAIS.

11.     Insurance and Investigation.  Carrier shall place into effect and carry during the
term of the Agreement cargo liability insurance, from an insurance carrier rated at least
"A" by *Best's Rating Guide*, per shipment without deductible, and comprehensive
general liability insurance of at least $1 million per occurrence and $2 general aggregate
limit.  Written evidence of such insurance shall be provided to TAIS within thirty (30)
days from the Effective Date of this Agreement.  Carrier's insurance policies shall not
exclude coverage for infidelity, fraud, dishonesty or criminal acts of Carrier's employees,
agents, officers or directors.  In the event of any lapse in such coverage, Carrier shall
immediately notify TAIS, and failure to do so shall constitute grounds for immediate
cancellation or rescission of this Agreement by TAIS without further notice.  In the event
of a loss or damage to shipments made on behalf of TAIS, or inbound to Shippers
facilities, Carrier shall immediately notify the TAIS' Logistics Department in writing by
facsimile within twenty-four (24) hours thereof.  Carrier shall also provide TAIS with

4

CEVA000038

daily notice of any deliveries outstanding for seventy-two (72) hours or longer. In addition, Carrier shall conduct an internal investigation as soon as the Carrier knows of any loss or damage to TAIS' cargo. Carrier must give TAIS written details of the investigation including police reports, when applicable, within thirty (30) days of the loss or damage.

12.    Carrier Liability.  Carrier assumes the liability of a common carrier consistent with the Carmack Amendment for shortage, loss, damage or delay of cargo from receipt until actual delivery of the cargo to consignee.

12.1    Shortage and loss include, but are not limited to, the mysterious disappearance or loss caused by negligence of the Carrier, its officers, employees, agents, subcontractors, or independent contractors. The amount of the Carrier's liability shall be full release value up to $50,000 for each U.S. domestic bill of lading, and $30,000 for each international bill of lading originating in the United States. For International shipments originating from overseas locations and falling under the Overseas Direct Shipping Program (Appendix B) or the Non-Direct Shipping Program (Appendix C) amount of the Carrier's liability shall be full release value up to $50,000.00 per Commercial Invoice from factory (OEM) to the destination gateway. For Direct Shipping Program DNs (Sales Orders), amount of the Carrier's liability shall be full release value up to $50,000.00 per DN once freight is transferred to Carrier's domestic system. It shall be Carrier's responsibility to identify shortages and/or damages which occurred during the international segment of travel, prior to transfer into the Carrier's domestic network. If no damage or loss is noted prior to transfer into Carrier's domestic system, damages/losses will be assumed to have occurred in the domestic network. Shortages and/or damages must be clearly documented and signed for at transfer so as to indicate whether the loss/damage occurred in the international or domestic system. Furthermore, to the extent shortage and/or loss exceed the above release values, liability will be calculated per the following terms: a) with respect to U.S. domestic transportation, $5.00 per pound; b) with respect to international shipments, liability per shipment shall be calculated in accordance with the applicable international carriage of goods convention. In the event that no such international convention is applicable liability per international shipment shall be calculated at $5.00 per pound. In no event shall the liability of Carrier or its officers, employees, agents, subcontractors or independent contractors for shortage or loss exceed One Million Dollars ($1,000,000) per shipment. TAIS will provide notice to Carrier of concealed damaged and/or concealed lost freight within seven (7) calendar days of Carrier's delivery of the cargo. Full release value coverage will apply to concealed damage and/or loss. No deductible or other limitation as published in any Motor Freight publication or tariff shall apply to tendered shipments. Subject to the limitations above, in the event of lost cargo, Carrier shall reimburse TAIS for its "Standard Cost."

12.2    If Carrier discovers a partial loss of cargo prior to delivery, Carrier must not deliver the shipment short, but shall contact the TAIS' Transportation Office for instructions. Carrier will mark TAIS' bill mask with the annotation, "Do Not Deliver Short. Contact Originating Terminal For Instructions."

CEVA000039

12.3    In the event a shipment is discovered to have a partial loss, and the Carrier is directed to return the remaining portion of the shipment to Irvine, CA, the transportation will be on a "free astray" basis (defined as, transported at no cost to TAIS) for inspection. In the event Carrier discovers any portion of TAIS' cargo has been broken into, and either all or parts of the contents are missing, Carrier shall transport such product on a "free astray" basis to TAIS in Irvine, CA for inspection. Carrier shall have no right to the salvage value of any remaining contents regardless of the outcome of the claim.

12.4    In the event Carrier delivers cargo that has been damaged, but no physical damage (cosmetic or otherwise) to the product(s) is/are evident, Carrier shall contact TAIS' Transportation Office for instructions.  When such cargo must be returned to TAIS' facility, transport will be "free astray" for inspection and/or re-boxing.

12.5    In the event of cargo damage or partial loss, the Carrier shall take due diligence to record all serial numbers (serialized product) and/or model numbers (non-serialized product) prior to delivering the remainder of the cargo either to the consignee or TAIS, according to TAIS' instructions.  If TAIS instructs Carrier to return cargo to TAIS in Irvine, CA, then Carrier shall have fourteen (14) calendar days to do so, after which time Carrier shall be assessed a charge of $10.00 per day per carton.  If such cargo is outstanding more than 90 days, the cargo will be considered lost and Carrier must pay TAIS the standard cost of the unit(s) in question.  Carrier shall pay such claims within thirty (30) days of the 91st day (i.e., 121 days after TAIS instructs the Carrier), or the penalty provisions of Section 12.8 will apply.

12.6    In the event TAIS in its sole discretion determines damaged cargo *is **not*** "beyond repair," Carrier's liability will be $30.00 per pound or the cost of repair (Material and Labor), whichever is less.  In the event TAIS in its sole discretion determines the damaged cargo *is* "beyond repair," Carrier shall be liable for the full release value, not to exceed $50,000 per Bill of Lading for U.S. domestic shipments and $30,000 for international shipments. Furthermore, to the extent cargo damage is "beyond repair" and exceeds $50,000 for a domestic bill of lading or $30,000 for an international bill of lading, liability for the loss above $50,000 or $30,000, respectively, will be calculated per the following terms: a) with respect to U.S. domestic transportation, $5.00 per pound; b) with respect to international shipments, liability per shipment shall be calculated in accordance with the applicable international carriage of goods convention. In the event that no such international convention is applicable liability per international shipment shall be calculated at $5.00 per pound. In no event shall the liability of Carrier or its officers, employees, agents, subcontractors or independent contractors for damages cargo "beyond repair" exceed One Million Dollars ($1,000,000) per shipment. TAIS shall take immediate possession of all damaged cargo. Carrier shall have no right to the salvage value of damaged cargo regardless of the future outcome of the claim, and Carrier shall not seek in any way to obtain the damaged cargo unless TAIS agrees otherwise in writing.  Carrier must obtain and retain proof of return (signed by a TAIS employee) for all damaged cargo.

6

CEVA000040

12.7 Carrier will accept as documentation of any loss a computer-generated Claim form, consistent in content with the requirements of National Motor Freight Classification. TAIS may send such documentation to Carrier via e-mail or facsimile. The only additional documentation TAIS will provide is a computer-generated "Item Master Inquiry," which lists the "Standard Cost" referenced in Paragraph 12.1.

12.8 Carrier shall make commercially reasonable efforts to pay claims within thirty (30) days of TAIS' filing date. Notwithstanding the foregoing, Carrier shall pay all undisputed TAIS claims within sixty (60) days of TAIS' filing date. All claims outstanding for more than 60 days without TAIS' written authorization shall be subject to a penalty of 5% of the claim amount. TAIS shall assess the aforementioned penalty for each ten (10) day period over 60 days from the filing date. The "filing date" for purposes of this Section shall be defined as the date Carrier receives, in writing, a complete claim package from TAIS.

12.9 Neither this Agreement, nor any recovery from the Carrier, shall be deemed to affect, preclude or preempt TAIS from receiving any additional recovery in tort or otherwise as against any entity other than the Carrier, its officers, employees, and directors.

12.10 TAIS shall have twelve (12) months. from the date of shipment to file cargo claims for either loss or damage, or both. This Section 12.10 does not apply to concealed loss or concealed damage, which is governed by Section 12.1, above.

12.11 Notwithstanding anything to the contrary herein, EXCEPT FOR ITS INDEMNITY OBLIGATIONS AND BREACH OF SECTION 15, IN NO EVENT SHALL EAGLE BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL (INCLUDING LOST PROFITS), SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES IN CONNECTION WITH THE GOODS OR THE SERVICES RENDERED HEREUNDER EVEN IF NOTICE WAS GIVEN OF THE POSSIBILITY OF SUCH DAMAGES AND EVEN IF SUCH DAMAGES WERE REASONABLY FORESEEABLE. This paragraph shall survive termination of this Agreement.

13. Force Majeure. Either party shall be excused from any delay or failure in performance hereunder caused by reason of any occurrence or contingency beyond its reasonable control, including but not limited to, acts of God, earthquake, labor disputes and strikes, riots, war, or governmental requirements provided that the party experiencing such delay promptly provides written notice to the other party of the delay. The obligations and rights of the party so excused shall be extended on a day-to-day basis for the period of time equal to that of the underlying cause of the delay.

14. Notice. Any and all notices required or permitted to be given under this Agreement shall be in writing and shall be delivered to the party entitled to receive the same by hand, by facsimile, by private overnight delivery services or by U.S. prepaid mail, return receipt requested, addressed to the following:

CEVA000041

TAIS:    Toshiba America Information Systems, Inc.
9740 Irvine Boulevard
Irvine, CA 92618
Attn: Transportation Manager
Fax: (949) 587-6081

For notices relating to modification, termination or renewal of this Agreement:

Toshiba America Information Systems, Inc.
9740 Irvine Boulevard
Irvine, CA 92618
Attn: Vice President, General Counsel
Fax: (949) 587-6235

Carrier:    EGL Eagle Global Logistics LP
15350 Vickery Drive
Houston, Texas 77032
Attn:
Fax:

or to such other address as either party shall from time to time advise the other party.
Any notice given under this Agreement shall be effective, if by personal delivery, on the
date of such delivery, if by facsimile, on the day sent, if by overnight delivery service,
one day after submission to such service and if sent by mail, three (3) days after return
receipt accepted at TAIS' address.

15.    Confidential Information.    Each Party acknowledges that it may acquire
information and materials about the other Party, including but not limited to its technical
information, experimental work, pricing, customers and suppliers, and that all such
knowledge, information and materials acquired or developed are and shall be trade secret
and confidential and proprietary information (hereinafter referred to as "Confidential
Information"). Each Party shall hold the other Party's Confidential Information in strict
confidence, not to disclose the Confidential Information to any third party or to use the
Confidential Information in any way, commercially or otherwise, and not to allow any
unauthorized person access to the Confidential Information, either before or after
expiration or termination of this Agreement, without the prior written consent of the Party
disclosing the Confidential Information (the "Disclosing Party"). Further, each Party
shall take all actions reasonably necessary and satisfactory to the other Party to protect
the confidentiality of that other Party's Confidential Information including, without
limitation, implementing and enforcing operating procedures to minimize the possibility
of unauthorized use or copying of the Confidential Information and limiting disclosure of
Confidential Information only to the Party's agents, employees, or independent
contractors with a business need to know who (i) have been approved in advance by the

8

CEVA000042

other Party, (ii) have been advised of the confidential nature thereof, and (iii) are under an express written obligation to maintain such confidentiality.

Confidential Information does not include information that: (a) is now, or hereafter becomes, through no act or failure to act on the part of the Party receiving the Confidential Information (the "Receiving Party"), generally known or available to the public; (b) was known by Receiving Party prior to the effective date of this Agreement; (c) was acquired by Receiving Party before receiving such information from the Disclosing Party and without restriction as to use or disclosure; (d) is hereafter rightfully furnished to Receiving Party by a third party; (e) has been independently developed by the Receiving Party; (f) is required to be disclosed pursuant to any law or regulation; or (g) is disclosed with the prior written consent of Disclosing Party. Upon termination or expiration of this Agreement, the Receiving Party shall deliver to the Disclosing Party all Confidential Information and all copies thereof, which shall remain the property of the Disclosing Party.

16.     Governing Law and Jurisdiction. This Agreement shall be governed by and interpreted in accordance with the laws of the State of California, excluding California's conflict of law provisions that direct the application of another jurisdiction's laws. The parties expressly consent to the jurisdiction of the federal and state courts located in Orange County, California in the event of any litigation relating to this Agreement.

17.     Arbitration. All questions or controversies arising out of or related to this Agreement, other than cargo claims, shall be submitted to binding arbitration in Irvine, California according to the then-existing rules of the American Arbitration Association, except to the extent those rules conflict with the terms of this Section.

        17.1    Notice. The party desiring to initiate arbitration must do so by sending written notice of an intention to arbitrate by registered or certified mail to the other party(ies) and to AAA. The notice must contain a description of the dispute, the amount of money involved, and the remedies sought.

        17.2    Arbitrator. The parties shall attempt to agree on a retired judge or experienced lawyer from the AAA panel to act as the arbitrator hereunder. If the parties are unable to agree, AAA shall provide a list of three (3) available and impartial retired judges/lawyers to each party and each party may strike one (1) name from the list. The remaining judge/lawyer shall serve as the arbitrator. No one who has ever had any business, financial, family or other special relationship with any party to this Agreement shall serve as an arbitrator, unless the related party informs the other party(ies) of the relationship and the other party(ies) consent(s) in writing to the use of that arbitrator.

        17.3    Discovery. The parties shall be entitled to conduct discovery, take depositions, and require the production of documents that would be discoverable under California law. All discovery disputes shall be decided in the sole discretion of the arbitrator.

9

CEVA000043

17.4    Hearing.    The parties have the right to representation by legal counsel throughout the arbitration proceedings. The presentation and admissibility of evidence at the arbitration hearing shall be governed by the California Evidence Code. Within reasonable limitations, both sides at the hearing may call and examine witnesses for relevant testimony, introduce relevant exhibits or other documents, cross-examine or impeach witnesses who shall have testified orally on any matter relevant to the issues, and otherwise rebut evidence, as long as these rights are exercised in an efficient and expeditious manner in the sole discretion of the arbitrator. Oral evidence given at the arbitration hearing shall be given under oath.

17.5    Decision.    The arbitrator's decision shall be based on the evidence introduced at the hearing, including all logical and reasonable inferences therefrom. The prevailing party shall recover reasonable attorneys' fees and reasonable costs incurred in connection with the arbitration proceeding, in addition to any relief to which it may be entitled by law. The award must be made in writing and signed by the arbitrator. It shall contain a concise statement of the reasons in support of the decision. The award must be mailed promptly to the parties, but no later than thirty (30) days from the closing of the hearing. The award may be judicially enforced (confirmed, corrected or vacated) pursuant to California Code of Civil Procedure Section 1285 et. seq. The award is final and binding and there shall be no direct appeal from the award on the grounds of error in the application of the law.

18.    Modification. This Agreement and the attached Appendices may not be modified or amended except in writing signed by authorized representatives of both parties.

19.    Waiver. Failure of either party to require strict performance by the other party of any provision of this Agreement shall not affect the first party's right to require strict performance thereafter. Waiver by either party of a breach of any provision of this Agreement shall not waive either the provision itself or any subsequent breach.

20.    Severability. If any provision of this Agreement is for any reason found by a court of competent jurisdiction to be unenforceable, the remainder of this Agreement shall continue in full force and effect.

21.    Headings. The headings and titles of the Sections of the Agreement are inserted for convenience only, have no force or effect and shall not affect the construction or interpretation of any provision.

22.    Entire Agreement. This Agreement and the attached Appendices constitute the full and complete understanding and agreement of the parties hereof and supersedes and renders without any force or effect all prior written or oral understandings and agreements. However, the parties hereto may from time to time amend, modify, supplement or add to the services to be performed by a writing that specifically mentions this Section. Each and every term in every paragraph of this Agreement is a material term, which cannot be deviated from, as to which any failure in compliance shall entitle TAIS to cancel or rescind this Agreement as well as pursue all available remedies. To the extent that the text of this Agreement is inconsistent with any Appendix, Exhibit or Bill of Lading, the text of this Agreement shall prevail. TAIS' preparation of a bill of lading shall be deemed a mere receipt, not a contract.

CEVA000044

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the day and year first above written.

TOSHIBA AMERICA INFORMATION SYSTEMS, INC.

By: _Gary Weaver_

Name:   Gary Weaver

Title:   VP Operations

Date:   2/12/04

EGL EAGLE GLOBAL LOGISTICS, LP
    by its general partner,
    EGL Management LLC

By: _____

Name: Elijio V. Serrano

Title:  CFo

Date: 2-25-04

Tax Identification No.:   76-0094895

11

CEVA000045

**APPENDIX A: Domestic Origin Shipping Program**
Toshiba America Information Systems, Inc.

All shipments tendered to EGL for domestic transportation will be subject to a dimensional weight factor of 250.

2.  The following attachments are applicable to shipments tendered to EGL under the Domestic Origin Shipping Program.

Attachment 1: Heavy Weight Airlift Rate Structure

Attachment 2: Fuel Surcharge

Attachment 3: 11 Western States Non-Guaranteed Ground Service Rates

Attachment 4: Next Day Time Specific Services

Attachment 5: Local Service Rate Structure

Attachment 6: Dedicated Driver Rates

Attachment 7: Heavyweight Pricing for Alaska, Hawaii, and Puerto Rico

Attachment 8: Special Lane Segment Pricing

Attachment 9: Heavy Weight Pricing for Guadalajara, Mexico

CEVA000046



## Attachment 1 to Appendix A: Domestic Origin Shipping Program
**Heavy Weight Airlift Rate Structure**

ORIGIN TAIS DOMESTIC SHIPPING PROGRAM - HEAVY WEIGHT AIRFREIGHT RATE STRUCTURE BETWEEN ANY TWO POINTS WITHIN THE CONTINENTAL UNITED STATES AND SPECIAL LANE SEGMENT PRICING

TOSHIBA AMERICA INFORMATION SYSTEMS, INC.
TOSH97926A

HEAVY WEIGHT AIRFREIGHT RATE STRUCTURE BETWEEN ANY TWO POINTS WITHIN THE CONTINENTAL UNITED STATES

| SERVICE | MINIMUM | PER LB |
|---|---|---|
| NFO / SAME DAY SERVICE | $180.00 | $1.78 |
| PRIORITY SERVICE (By Noon) | $90.00 | 98¢ |
| NEXT DAY SERVICE (By 5:00 PM) | $70.00 | 88¢ |
| SECOND DAY SERVICE | $50.00 | 61¢ |
| THREE DAY SERVICE | $40.00 | 42¢ |
| FOUR DAY SERVICE | $35.00 | 37¢ |
| FIVE DAY SERVICE | $35.00 | 32¢ |

### SPECIAL LANE SEGMENT PRICING

From:   LAX
To:     The Following Destinations

| DESTINATION | SERVICE | PER LB |
|---|---|---|
| Ardmore, Oklahoma | SECOND DAY | 32¢ |
| Dallas Ft. Worth, Texas | SECOND DAY | 23¢ |

- Rates are Door to Door and subject to attached Conditions of Contract.
- A dimensional factor of 250 will be effective for all Domestic shipments.
- Full Release Value will be applicable on all shipments, with a maximum liability of $50,000.00 for Domestic shipments and $30,000.00 for International shipments.
- Fuel Sur Charge charges will be as reflected on Page 2.
- All other charges will be waived.  Toshiba will be notified in advance if any other charges are necessary.

Effective Date:     8/11/03

Expiration Date:     4/30/04

**Eagle Global Logistics**
Agreed & Understood

Name:   Elolo Serrano
Title:   Chief Financial Officer
Date:

**Toshiba America Information Systems, Inc.**
Agreed & Understood

Name:   Gary Weaver
Title:   VP Operations
Date:   10/17/03

CEVA000047



**Attachment 2 to Appendix A: Domestic Origin Shipping Program**
**Fuel Surcharge**

| OPIS ENERGY GUIDE | TOSHIBA WILL BE CHARGED |
|---|---|
| 1% | 1% |
| 2% | 2% |
| 3% | 2% |
| 4% | 4% |
| 5% + | 4% |

Effective Date:    8/11/03

**Eagle Global Logistics**
Agreed & Understood

Name:    Emilio Serrano
Title:    Chief Financial Officer
Date:

Expiration Date:    4/30/04

**Toshiba America Information Systems, Inc.**
Agreed & Understood

Name:    Gary Weaver
Title:    VP Operations
Date:    10/17/03

CEVA000048



## Attachment 3 to Appendix A: Domestic Origin Shipping Program
## 11 Western States Non-Guaranteed Ground Service Rates

### TOSHIBA AMERICAN INFORMATION SYSTEMS
### TOSH97926A

#### Minimum Charge: $65.00

| | | |
|---|---|---|
| LAX – PDX | 2 Day Service | 29¢ per lb. |
| LAX – SEA | 2 Day Service | 29¢ per lb. |
| LAX – ABQ | 3 Day Service | 34¢ per lb. |
| LAX – SLC | 2 Day Service | 31¢ per lb. |
| LAX – DEN | 2 Day Service | 31¢ per lb. |
| LAX – TUS | Next Day Service | 24¢ per lb. |
| LAX – ELP | 2 Day Service | 33¢ per lb. |
| LAX – SAT | 3 Day Service | 33¢ per lb. |
| LAX – DFW | 2 Day Service | 29¢ per lb. |
| LAX – AUS | 2 Day Service | 33¢ per lb. |
| LAX – IAH | 3 Day Service | 33¢ per lb. |

- Rates are Door to Door and subject to Eagle Global Logistics Conditions of Contract.
- Rates subject to change with 30 days written notice.

Effective Date:      8/11/03          Expiration Date:      4/30/04

**Eagle Global Logistics**          **Toshiba America Information Systems, Inc.**
Agreed & Understood                Agreed & Understood

Name:   Eligio Serrano             Name:   Gary Weaver
Title:    Chief Financial Officer   Title:    VP Operations
Date:                              Date:    10/17/03

CEVA000049



**Attachment 4 to Appendix A: Domestic Origin Shipping Program**
**Next Day Time Specific Services**

## NEXT DAY TIME SPECIFIC GUARANTEED  AND NEXT DAY NON-GUARANTEED SERVICE RATES

### TOSHIBA AMERICA INFORMATION SYSTEMS TOSH97926A

From: LAX
To:     The Following Destinations

### NEXT DAY TIME SPECIFIC GUARANTEED SERVICE

| Airport City | Minimum | Rate Per lb. |
|---|---|---|
| SAN, SFO, SJC SMF, ONT | $70.00 | |

### NEXT DAY NON-GUARANTEED SERVICE

| | | |
|---|---|---|
| SAN, SFO, SJC SMF, FAT **(Max charge of $1,000 applies)** | $40.00 | |
| PHX, TUS, LAS | $40.00 | 18¢ |
| ONT | $40.00 | 12¢ |
| **(Max charge of $1,000 applies)** | | |
| SLC | $40.00 | |

- Rates are Door to Door and subject to attached Conditions of Contract.
- A dimensional factor of 250 will be effective for all Domestic shipments.
- Full Release Value will be applicable on all shipments, with a maximum liability of $50,000.00 for Domestic shipments and $30,000.00 for International shipments.
- All other charges will be waived.  Toshiba will be notified in advance if any other charges are necessary.

Effective Date:     8/11/03

Expiration Date:     4/30/04

**Eagle Global Logistics**
Agreed & Understood

Name:   Elfio Serrano
Title:     Chief Financial Officer
Date:

**Toshiba America Information Systems, Inc.**
Agreed & Understood

Name:   Gary Weaver
Title:     VP Operations
Date:     10/17/03

CEVA000050



## Attachment 5 to Appendix A: Domestic Origin Shipping Program
## Local Service Rate Structure

### TOSHIBA AMERICA INFORMATION SYSTEMS
### TOSH97926A

Regular Pick Up & Delivery

| Area (Miles) | Minimum | 100 | 1000 | 2000 | 5000 | Cap |
|---|---|---|---|---|---|---|
| 0-11 | $20.00 | $5.50 | $5.00 | $4.50 | $3.50 | $185.00 |
| 11.1-22 | $20.00 | $6.00 | $5.25 | $4.75 | $4.00 | $210.00 |
| 22.1-35 | $20.00 | $6.50 | $5.50 | $5.00 | $4.25 | $225.00 |
| 35.1-70 | $20.00 | $7.25 | $5.75 | $5.50 | $4.25 | $250.00 |
| 70.1-110 | $20.00 | $10.00 | $8.75 | $7.50 | $5.00 | $250.00 |

Special Pick Up & Delivery

| Area Miles | Mon. -- Fri. 0800 - 1800 | Mon. -- Fri. P.M. | Saturday 0800 - 1700 | Saturday After Hours | Sunday / Holiday |
|---|---|---|---|---|---|
| 0-11 | $30.00 | $40.00 | $50.00 | $60.00 | $75.00 |
| 11.1-22 | $35.00 | $45.00 | $55.00 | $65.00 | $90.00 |
| 22.1-35 | $45.00 | $50.00 | $60.00 | $70.00 | $105.00 |
| 35.1-50 | $50.00 | $55.00 | $65.00 | $75.00 | $120.00 |
| 50.1-70 | $75.00 | $85.00 | $95.00 | $100.00 | $125.00 |

Accessorial Charges

| | |
|---|---|
| Lift Gate per delivery | $30.00 |
| Two Man | $50.00 minimum / $25.00 an hour |
| Inside Delivery | $10.00 / .03 cents per pound |
| COD Fee | N/A |
| Residential/Mall/Military Base | $10.00 |
| Wait Time (first 30 minutes free) | $25.00 an hour |
| Airport Transfer Fee | $10.00 / .02 cents per pound |

### HOT SHOT CHARGES

| | |
|---|---|
| Vans | $ 1.75 per mile / Same Day Delivery |
| Bobtails | $ 2.00 per mile / Same Day Delivery |
| Tractor Trailer | $ 2.75 per mile / Same Day Delivery |

### 3% FSC will apply on local service.

Effective Date: 8/11/03

Expiration Date: 4/30/04

**Eagle Global Logistics**
Agreed & Understood

Name: Eligio Serrano
Title: Chief Financial Officer
Date:

**Toshiba America Information Systems, Inc.**
Agreed & Understood

Name: Gary Weaver
Title: VP Operations
Date: 10|17|03

CEVA000051



## Attachment 6 to Appendix A: Domestic Origin Shipping Program
**Dedicated Driver Rates**

## TOSHIBA AMERICA INFORMATION SYSTEMS, INC.
## TOSH97926A

$1,500.00 per week
1st 500 miles are free per week
8-hour workday with 1 hour for lunch
$.50 per mile after the 1st 500 miles
$45.00 per hour after the first 40 hours per week

- EGL will not bill for Holidays.
- For weeks with Holidays, charges will be pro-rated accordingly.

Effective Date:     8/11/03

**Eagle Global Logistics**
Agreed & Understood

Name:   Elijo Serrano
Title:   Chief Financial Officer
Date:

Expiration Date:   4/30/04

**Toshiba America Information Systems, Inc.**
Agreed & Understood

Name:   Gary Weaver
Title:   VP Operations
Date:   10/17/03

CEVA000052



**Attachment 7 to Appendix A: Domestic Origin Shipping Program**
Heavy Weight Pricing for Alaska, Hawaii, and Puerto Rico

## HEAVY WEIGHT AIRFREIGHT RATE STRUCTURE
## BETWEEN ANY TWO POINTS WITHIN THE CONTINENTAL UNITED
## STATES AND ALASKA, HAWAII AND PUERTO RICO

### TOSHIBA AMERICA INFORMATION SYSTEMS, INC.
### TOSH97926A

| SERVICE LEVEL | MINIMUM | ALASKA | HAWAII | PUERTO RICO |
|---|---|---|---|---|
| | | | | |
| SECOND DAY SERVICE | $100.00 | 97¢ | 80¢ | $1.10 |
| THREE TO FIVE DAY SERVICE | $80.00 | 75¢ | 65¢ | 95¢ |

- Rates are Door to Door to Anchorage, AK; Honolulu, HI and San Juan, PR.
- Rates expressed in U.S. Dollars per pound.
- Rates are subject to attached Conditions of Contract.
- Outer Island charges of $60.00 minimum or 35¢ per pound, whichever is greater or actual advance charges may apply to shipments to Kauai, Maui and Hawaii, (the Big Island).
- Full Release Value will be applicable on all shipments, with a maximum liability of $50,000.00 for Domestic shipments and $30,000.00 for International shipments.
- All other charges will be waived.  Toshiba will be notified in advance if any other charges are necessary.

Effective Date:     8/11/03

Expiration Date:     4/30/04

**Eagle Global Logistics**
Agreed & Understood

Name:     Elijio Serrano
Title:     Chief Financial Officer
Date:

**Toshiba America Information Systems, Inc.**
Agreed & Understood

Name:     Gary Weaver
Title:     VP Operations
Date:     10/17/03

CEVA000053



## Attachment 8 to Appendix A: Domestic Origin Shipping Program
**Special Lane Segment Pricing**

# TOSHIBA AMERICA INFORMATION SYSTEMS
# TOSH97926A

From: Irvine, CA
To:    Don Mills, Ontario Canada / YYZ

**1-2 Day Service**
Minimum:  $120.00
Per lb:  $1.50

**2-3 Day Service**
Minimum:  $120.00
Per lb:  $1.10

**5 Day Ground Service**
Minimum:  $75.00
Per lb:  52¢

**Handling:   $25.00**
Fuel Surcharge:          5¢ per lb.
Security:                     7¢ per lb.
Special Pick-up:         $45.00 (when necessary)

- Rates are Door to Door and subject to Eagle Global Logistics Conditions of Contract.
- Cut Time for Next Day Service will be 1400.
- Dimensional Factor of 166 will apply.
  Rates subject to change with 30 days written notice.

Effective Date:        8/11/03

Expiration Date:     4/30/04

**Eagle Global Logistics**
Agreed & Understood

Name:   Elidio Serrano
Title:    Chief Financial Officer
Date:

**Toshiba America Information Systems, Inc.**
Agreed & Understood

Name:   Gary Weaver
Title:    VP Operations
Date:    10/17/03

CEVA000054



## Attachment 9 to Appendix A: Domestic Origin Shipping Program
**Heavy Weight Pricing for Guadalajara, Mexico**

# TOSHIBA AMERICA INFORMATION SYSTEMS, INC.
## TOSH97926A

From: LAX & MEM
To: GDL

| SERVICE | MINIMUM | PER LB |
|---|---|---|
| NEXT DAY SERVICE | $100.00 | $1.10 |
| SECOND DAY SERVICE | $100.00 | $1.00 |
| SEVEN TO TEN DAY SERVICE | $75.00 | 50¢ |

- Rates are Door to Door and subject to attached Conditions of Contract.
- A dimensional factor of 166 will be effective for all International shipments.
- Full Release Value will be applicable on all shipments, with a maximum liability of $50,000.00 for Domestic shipments and $30,000.00 for International shipments.
- Any shipment delivered to beyond points well outside normal delivery may be subject to additional charges. Toshiba must be notified of these charges in advance of each delivery.
- All other charges will be waived. Toshiba will be notified in advance if any other charges are necessary.

Effective Date:     8/11/03               Expiration Date:     4/30/04

**Eagle Global Logistics**          **Toshiba America Information Systems, Inc.**
Agreed & Understood               Agreed & Understood

Name:   Elijó Serrano          Name:   Gary Weaver
Title:   Chief Financial Officer          Title:   VP Operations
Date:                    Date:   10/17/03

CEVA000055

## APPENDIX B: Overseas Direct Shipping Program
**Toshiba America Information Systems, Inc.**

All shipments tendered to EGL under the Overseas Direct Shipping Program will be subject to a dimensional weight factor 7000 cubic centimeters to the Kilogram.

2. Fuel and Security Surcharges are known to fluctuate and will not be inflated by the carrier for any reason. They will be a straight "Pass Through". Notification of FSC or SSC increases/decreases must be received a minimum of 15 days prior to implementation and will be through email at a minimum.

3. The following attachments are applicable to shipments tendered to EGL under the Domestic Origin Shipping Program.

Attachment 1: Import Air: Manila, Philippines to All Points USA

Attachment 2: Import Air: Taipei, Taiwan to All Points USA

Attachment 3: Import Air: Shanghai, China to All Points USA

Attachment 4: TAIS Service Level Performance Guidelines

CEVA000056



## Attachment 1 to Appendix B: Overseas Direct Shipping Program
Import Air: Manila, Philippines to All Points USA

### TOSHIBA AMERICA INFORMATION SYSTEMS – 703168

Origin: Manila, Philippines

| Service / Gateway | LAX (TAIS Irvine) | LAX | SFO | DFW | ORD | ATL | JFK |
|---|---|---|---|---|---|---|---|
| 5 Day Door / Door) | $2.64 | $2.70 | $2.70 | $3.00 | $3.00 | $3.00 | $3.00 |

Note: Above rates include the following:
- ❖ Origin Pick-Up
- ❖ Origin Handling and Customs
- ❖ Import Customs Clearance
- ❖ Delivery at Destination

\* All transactions pertaining to this program require that the Transin File method be used.

Effective Date:     8/11/03

Expiration Date:     4/30/04

**Eagle Global Logistics**
Agreed & Understood

Name:   Elijio Serrano
Title:    Chief Financial Officer
Date:

**Toshiba America Information Systems, Inc.**
Agreed & Understood

Name:   Gary Weaver
Title:    VP Operations
Date:    10/17/03

CEVA000057



## Attachment 2 to Appendix B: Overseas Direct Shipping Program
Import Air: Taipei, Taiwan to All Points USA

### TOSHIBA AMERICA INFORMATION SYSTEMS – 703168

Origin: Taipei, Taiwan

| Service / Gateway | LAX (TAIS Irvine) | LAX | SFO | DFW | ORD | ATL | JFK |
|---|---|---|---|---|---|---|---|
| 5 Day Door / Door | | | | | | | |
| Peak | $3.58 | $3.62 | $3.62 | $3.70 | $3.70 | $3.72 | $3.75 |
| Slack | $3.03 | $3.04 | $3.04 | $3.06 | $3.08 | $3.06 | $3.08 |

Note: Above rates include the following:
- ❖ Origin Pick-Up
- ❖ Origin Handling and Customs
- ❖ Import Customs Clearance
- ❖ Delivery at Destination

\* All transactions pertaining to this program require that the Transin File method be used.

Effective Date:     8/11/03

Expiration Date:     4/30/04

**Eagle Global Logistics**
Agreed & Understood

Name:     Elllie Serrano
Title:     Chief Financial Officer
Date:

**Toshiba America Information Systems, Inc.**
Agreed & Understood

Name:     Gary Weaver
Title:     VP Operations
Date:     10/17/03

CEVA000058



## Attachment 3 to Appendix B: Overseas Direct Shipping Program
Import Air: Shanghai, China to All Points USA

### TOSHIBA AMERICA INFORMATION SYSTEMS – 703168

Origin: Shanghai, China

| Service / Gateway | LAX (TAIS Irvine) | LAX | SFO | DFW | ORD | ATL | JFK |
|---|---|---|---|---|---|---|---|
| 5 Day Door / Door) | $3.62 | $3.68 | $3.68 | $4.06 | $4.20 | $4.06 | $4.20 |

Note: Above rates include the following:
  ❖ Origin Pick-Up
  ❖ Origin Handling and Customs
  ❖ Import Customs Clearance
  ❖ Delivery at Destination

\* All transactions pertaining to this program require that the Transin File method be used.

Effective Date:    8/11/03

Expiration Date:    4/30/04

**Eagle Global Logistics**
Agreed & Understood

Name:    Emilo Serrano
Title:    Chief Financial Officer
Date:

**Toshiba America Information Systems, Inc.**
Agreed & Understood

Name:    Gary Weaver
Title:    VP Operations
Date:    10/17/03

CEVA000059

**APPENDIX C: Non-Direct Shipping Program**
**Toshiba America Information Systems, Inc.**

For purposes of the Non-Direct Shipping Program paragraph 12.2 does not apply.

2. Fuel and Security Surcharges are known to fluctuate and will not be inflated by the carrier for any reason. They will be a straight "Pass Through". Notification of FSC or SSC increases/decreases must be received a minimum of 15 days prior to implementation and will be through email at a minimum.

3. The following attachments are applicable to shipments tendered to EGL and destined to TAIS in Irvine, California.

    Attachment 1: TAIS Pricing Terms
    Attachment 2: TAIS Service Level Performance Guidelines

CEVA000060

**ATTACHMENT 1 To APPENDIX C: Non-Direct Shipping Program**
**TAIS Pricing Terms**

### Pricing Terms

A) From Manila to Los Angeles

| | |
|---|---|
| Express door to airport service: | USD 3.10/ kg |
| Standard door to airport service: | USD 2.40/ kg |
| Deferred door to airport service: | USD 2.20/ kg |
| Express airport to airport service: | USD 2.80/ kg |
| Standard airport to airport service: | USD 2.10/ kg |
| Deferred airport to airport service: | USD 1.90/ kg |

Volume Weight Factor:  7000 cu cm to 1 kg
Above rates do not include Fuel or Security Surcharges.

B) From Hangzhou/Shanghai to Los Angeles

| | |
|---|---|
| Express door to airport service: | USD 3.08/ kg |
| Standard door to airport service: | USD 2.78/ kg |
| Deferred door to airport service: | USD 2.58/ kg |
| Express airport to airport service: | USD 2.90/ kg |
| Standard airport to airport service: | USD 2.60/ kg |
| Deferred airport to airport service: | USD 2.40/ kg |

Volume Weight Factor:  7000 cu cm to 1 kg
Above rates do not include Fuel or Security Surcharges.

Above rates are guaranteed until August 15th, 2004

Effective Date:  October 15, 2003
**Eagle Global Logistics**
Agreed & Understood

Name:   Elijio Serrano
Title:   Chief Financial Officer
Date:

Expiration Date: August 15, 2004
**Toshiba America Information**
Agreed & Understood

Name:   Gary Weaver
Title:   VP Operations
Date:   10/17/03

CEVA000061

**ATTACHMENT 2 To APPENDIX C: Non-Direct Shipping Program**
**Service Level Performance Guidelines**

Transit time commitment by carrier

   A.  From Manila to Los Angeles

| | |
|---|---|
| Express door to airport service: | 2 days (including day line) |
| Standard door to airport service: | 3 days (including day line) |
| Deferred door to airport service: | 4 days (including day line) |
| Express airport to airport service: | 2 days (including day line) |
| Standard airport to airport service: | 3 days (including day line) |
| Deferred airport to airport service: | 4 days (including day line) |

   B.  From Shanghai/Hangzhou to Los Angeles

| | |
|---|---|
| Express door to airport service: | 2 days (including day line) |
| Standard door to airport service: | 3 days (including day line) |
| Deferred door to airport service: | 4 days (including day line) |
| Express airport to airport service: | 2 days (including day line) |
| Standard airport to airport service: | 3 days (including day line) |
| Deferred airport to airport service: | 4 days (including day line) |

For example:   1 day (including day line)
Day 0 – freight being picked up at origin
Day 1 – freight arrive at destination airport

2.  Guarantee On time performance

Express Service:   98%
Standard Service:   95%
Deferred Service:   95%

3.  Penalty for shipments that do not arrive on time

TAIS will pay for the specific service actually rendered.   If TAIS requests Express Service and Standard Service is provided, then TAIS will only be responsible for payment of Standard Service level pricing.

4.  Reporting: Monthly cycle time report must be provided to TAIS

Effective Date:  October 15, 2003
**Eagle Global Logistics**
Agreed & Understood

Name:   Elvio Serrano
Title:   Chief Financial Officer
Date:

Expiration Date: August 15, 2004
**Toshiba America Information**
Agreed & Understood

Name:   Gary Weaver
Title:   VP Operations
Date:   10/17/03

CEVA000062

**APPENDIX D: Ocean Direct Shipping Program**
**Toshiba America Information Systems, Inc.**

Reserved For Future Use

CEVA000063

**APPENDIX E: Transportation (Suggested) Minimum Security Guidelines**
Toshiba America Information Systems, Inc.

1. **General**

   Carrier agrees to implement TAIS' Minimum Security Guidelines. Carrier shall follow generally accepted practices and take all reasonable precautions to protect TAIS assets. Carrier agrees to ensure a level of security acceptable to TAIS at all times.

   1.2. TAIS may issue a written waiver to a requirement that is not applicable, or deemed impractical or unnecessary; however, the carrier must comply with all requirements in this Appendix that are not waived in writing.

   1.3. The carrier shall assign a senior security representative to implement, standardize and monitor their camera security procedures at all servicing and transit locations worldwide. The representative will integrate TAIS minimal security guidelines, outlined herein, into Carrier's security procedures and ensure that they are implemented.

   1.4. The carrier will produce to TAIS' transportation manager written security procedures and evidence of implementation based on TAIS' security guidelines not later than thirty (30) days after commencement of the transportation agreement.

   1.5. Carrier agrees to name TAIS, and its insurer, as a "named insured" on all insurance policies and to provide TAIS with a copy of a current certificate(s).

   Carrier will provide TAIS with a copy of the current US Department of Transportation's Motor Carrier Safety Rating and will provide copies of all future rating updates.

2. **Carrier Personnel**

   2. Carrier shall ensure that all employees and sub-contractors that have access to TAIS product are positively vetted (drug tested and background checked) before employment commences. The background check will include a review of the applicant's prior employment, driving and criminal history for a minimum of five years. The carrier will provide evidence of vetting to TAIS, if requested.

   2.2. Carrier confirms that employees of the carrier that perform work at TAIS facilities have no record of felony criminal convictions involving drugs or combative behavior or theft within the last five years. Carrier understands that such employees may be subject to criminal history investigations by TAIS, at TAIS' expense, and will be denied access to TAIS facilities if any such criminal convictions are discovered.

   2.3. Carrier will ensure their timelog policy and drivers comply with Department of Transportation (DOT) requirements.

CEVA000064

2.4.   Carrier will ensure a vigorous security awareness and education programs, characterized by signs, posters, meetings, new employee security orientation and an employee anonymous hot-line to report incidents.

## 3.   Carrier's Premises Security

Carrier will provide and maintain, at all times, adequate security systems to allow continuous security monitoring and protection of TAIS' freight against fire, theft and intrusion. This will include a building fire detection system, an intruder detection system and a closed circuit television system with a video recording capability. The video must cover all areas where TAIS assets are present. Videotapes must be saved a minimum of thirty (30) days.

3.2.   Carrier will ensure that all vehicle and pedestrian access to its premises is controlled to prevent unauthorized casual or intentional intrusion. Details of measures shall be included in Carrier's security procedures.

## 4.   Handling Guidelines

Carrier will make every effort to deliver TAIS freight at the earliest possible time and not to store freight. The Carrier will not consolidate TAIS freight at the destination terminal for the purpose of maximizing their resource (equipment or personnel) utilization.

4.2.   Carrier will establish standing delivery times daily with TAIS' customers or will establish a delivery time for each shipment as soon as freight is picked up at TAIS (Point of origin). If the Carrier is going to: a) be more than 15 minutes late for a scheduled appointment, b) needs to cancel a scheduled appointment or c) there is no freight for a standing appointment, then the Carrier will notify the consignee receiving dock personnel. TAIS will be notified on an exception basis, in writing, by the tenth day of each calendar month, for the proceeding months' exceptions.
Carrier will notify TAIS immediately in writing of any customers who refuse to receive TAIS freight within seventy-two (72) hours of requested delivery time.

4.4.   TAIS may perform routine surveys, at TAIS' expense, of Carriers performance from our customers' viewpoint and report the results to the Carrier.

4.5.   Carrier will not breakdown TAIS pallet shipments for any reason without written authorization from TAIS.

4.6.   The Carriers process will ensure that there is a count of individual pieces at every transfer point from initial receipt at TAIS until and including the final destination. The Carriers process must establish accountability: the individual counting the individual pieces must sign for and acknowledge receipt by piece count; the Carriers process must be able to identify at what transfer point the loss of freight was determined; the names of the individuals acknowledging receipt (or loss) of the freight at all transfer points must be identifiable; and that the name of the receiver at the customer is identifiable (Carriers delivery forms should require the name of the individual signing for the freight to be printed in addition to the signature).

CEVA000065

Carrier must investigate all shortages and damage immediately and notify TAIS within 24-hours of the time they become aware of the shortage. Also, any freight showing evidence of being opened or tampered with must be reported to TAIS immediately and a written report must be produced within twenty-four (24) hours following the discovery.

All of the carriers loss and shortage investigation reports will be made available to TAIS upon request, regardless of shipment moving on prepaid or collect basis, provided TAIS is either the shipper or receiver of the freight.

4.9.   The carrier is prohibited from opening TAIS freight unless directed in writing by a Customs officer, or TAIS.

## 5.   Secure Storage

In the event that TAIS freight must be stored at the carrier's premises for more than four (4) hours, the carrier will secure the freight in a restricted and secured access area that meets the following minimal guidelines. Examples of secure storage may include sealed or locked containers, locked cages, and locked hard-wall areas.

5.1.   The area must have limited access, restricted to supervisory personnel, involved directly in the transport of TAIS freight who meet the vetting requirements of Section 2.2.

Precautions must be taken to protect the access mechanism (e.g., key, combination, or badge).

5.3.   The area must be under constant CCTV coverage. The CCTV coverage must be capable of recording the identity of all individuals accessing the area. Recordings must be kept a minimum thirty (30) days. Lighting must be sufficient to ensure adequate recording.

5.4.   There must be after-hours intrusion detection of the facility and the immediate area where TAIS product is stored, when the facility or area is unmanned.

5.5.   Storage of TAIS product in trailers outside the building should be used only as a last resort. If a trailer has to be used, the carrier agrees (in addition to the above requirements) to use high-security locks on the trailer door, use king pin locks on the trailer itself and to position the trailer against a building or other trailers to prevent product from being removed and the trailer from being moved. Trailers containing TAIS product should never be stored in an unmanned yard. The yard must be fully fenced, locked down and manned after hours.

## 6.   Vehicle & In-Transit Security

6.   All trailers used for transporting TAIS product shall be equipped with solid sides and will be locked and sealed by carrier personnel. Carrier will ensure that the seal is not broken or otherwise tampered with. Carrier will follow piece count procedures as outlined in Section 4.8.

CEVA000066

6.2.  Carrier agrees that all transit of TAIS product will be point to point and that the driver will not deviate from the assigned pick-ups or delivery routes nor make unscheduled stops.

6.3.  TAIS reserves the right to require, at any time, that the Carrier's vehicle tractor units and trailers be fitted with a mutually agreed vehicle location system and that arrangements be made to supply TAIS with copies of alarm exception reports.

6.4.  All Carrier's vehicles used for carrying TAIS product shall be equipped with a suitable communication system that will allow the vehicle driver to request assistance in the event of an emergency. (Minimum of two-way radios.)

6.5.  Carrier shall use routes and schedules (published and well traveled) which maximize overall freight security. Suppliers will not permit any deviation except to exceptional circumstances; i.e. floods and road or traffic conditions that create excessively long delays, mandatory detours, or other causes that are justifiable. Unscheduled stops are not permitted.

6.6.  Carrier shall implement a system to insure that a Carrier driver/representative is present when product is loaded at TAIS and unloaded at consignee.

6.7.  Supplier will incorporate a pre-alert process for unusually high value cargo or expedited deliveries ("hot" shipments) for point to point shipments that can be requested by TAIS, if desired.

## 7.  Reviews and Audits

7.1  TAIS reserves the right, at TAIS' expense, to audit any of Carrier's premises and/or servicing and transit locations, including sub-contractors facilities.

7.2.  Carrier will perform twice a year self-audit of all their facilities and all sub-contractor facilities and hub locations through which TAIS freight is moved. Carrier will report results to TAIS at the quarterly security performance meetings.

## 8.  Carrier 's use of Sub-Contractors

8.1  Carrier agrees that all subcontractors must agree contractually to abide by these minimum-security requirements. The supplier's written agreement with the sub-contractor will state this requirement and incorporate these minimum-security guidelines.

8.2.  Carrier agrees to notify TAIS in advance of all proposed sub-contractors.

8.3.  Sub-contractors facilities are subject to the same audit procedures noted in Section 7 above.

9.    **Incident and Security Performance Reporting Responsibilities**

9.    Carrier corporate security representative will report incidents to TAIS and law
enforcement immediately and provide written preliminary report within 24-hours
of any such incident. If material is to continue transit, reasonable effort must be
made to preserve evidence of tampering, (e.g., photographs).   Carrier shall
provide shipper copies of any internal or police reports within thirty (30) days of
loss.

Carrier will provide status reports to TAIS of all necessary security process and
facility improvements.

9.3.   TAIS Logistic or Insurance representatives shall have open access to Carrier
facility audits and loss/theft investigations or may conduct an investigation on
their own.    Carrier agrees to provide reasonable cooperation to said
representatives in the course of its investigation. Also, TAIS' Corporate Security
shall, as necessary, participate with Carrier Security on security investigations
and resolutions of issues involving loss/theft investigations.

Carrier's Corporate Security Official will meet with TAIS Security and/or
Transportation Manager no less than semi-annually, or as required, to review
security performance.  A security report will be submitted as required, with
copies provided to TAIS Security and to TAIS Logistics. Any irregularities and
corrective action plans will be explained.  Carrier will provide to TAIS a full
report on all losses and thefts at specific facilities for the past twelve (12)
months.  Carrier's performance report will list losses for both TAIS and non-
TAIS freight (anonymously).

10.   **Reporting Requirements:**

Carrier agrees to provide a weekly summary report showing total shipments, total
pieces, number of orders short, number of pieces short, % of orders short and %
of pieces short.

Carrier agrees to report shortages, overages, and refused or delayed delivery.
Carrier will notify TAIS and provide the information, by calling/e-mailing the
TAIS Transportation Department at 949/583-3815 or by fax to 949/587-6081.

Effective Date:  October 15, 2003
**Eagle Global Logistics**
Agreed & Understood

Name:   Elijio Serrano
Title:    Chief Financial Officer
Date:

**Toshiba America Information**
Agreed & Understood

Name:   Gary Weaver
Title:   VP Operations
Date:    10/17/03

CEVA000068

SEP. 24. 2008 12:23PM  Mail FAXLAX GATEWAY                    NO. 8585   P. 15/16

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

## Attachment 1 to Appendix F: International Air Transportation Rates

### TDM Air / Air Program

| Airport | City | Country | Airport | City | Country | Service Type | Service Level | Transit Time (Days) | Unit of Measure (kgs/lbs) | Currency Code | Per Kg. |
|---------|------|---------|---------|------|---------|--------------|---------------|--------------------|--------------------------|---------------|---------|
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Transship with Crating | 6 | Kilos | USD | $ 5.03 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Transship without Crating | 6 | Kilos | USD | $ 4.97 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Interline with Crating | 9 | Kilos | USD | $ 5.03 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Interline without Crating | 9 | Kilos | USD | $ 4.97 |

Note 1 — Transship pricing subject to two (2) fuel surcharges and two (2) security surcharges at market rates
*CEVA will provide monthly updates on fuel pricing from the Shanghai and Los Angeles Markets*

Note 2 — Interline pricing subject to one (1) fuel surcharge and one (1) security surcharge at market rates

Note 3 — Per Kilo Rate is a door-to-door at the Kuehne + Nagel warehouse in Mexico City

Note 4 — **Standard liability applies ($ 20.00 per kilo / $ 9.07 per pound)**

Note 5 — Per Kilo Pricing is contingent on minimum shipment quantities of six (6) full pallets

Note 6 — Per Kilo Pricing Does NOT include Custodia
*Custodia defined as a shipment that is requested to remain in the airport warehouse for a period longer than 72 hours*

Note 7 — Per Kilo Pricing Does NOT include Duty and Tax

Note 8 — Per Kilo Pricing Does NOT include Expedite charges
*Expedite defined as a shipment where a request from TAIS or TDM is placed to process the NOM / NYCE & Customs Clearance in a period less than 48 hours after arrival in Mexico City*

Note 9 — Per Kilo Pricing Does include three (3) free days at MEX airport warehouse

Note 10 — Per Kilo Pricing Does include data entry of the part and serial numbers for the pedimento



CEVA000075

SEP. 24. 2008 12:23PM  Mail FAXLAX GATEWAY                    NO. 8585   P. 16/16

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

Note 11    Per Kilo Pricing Does include delivery in an armored vehicle until such a time as not required by Toshiba (TAIS) insurance company
*Toshiba (TAIS) agrees to inform CEVA Logistics as soon as approval to drop the armored delivery requirement is obtained from their (TAIS) insurance company – Nipponkoa*

Note 12    Per Kilo Pricing Does include completion of the NOM / NYCE process
*Outer labeling of each unit*
*Opening of each carton and removal of original warranty and insertion of Spanish language warranty*
*Labeling of the software package*
*Labeling of the notebook computer*
*Verification of the serial numbers on the notebook power supply cord*

Note 13    Per Kilo Pricing Does include pallets being rebuilt upon completion of the NOM / NYCE process using the original packaging before delivery to Kuehne + Nagel.

Note 14    Destination charges **NOT** included in the DTD rate (Notes 6, 7, and 8 above and any other charges not listed on this document) will be billed directly to Toshiba de Mexico (TDM)

Note 15    Pick up day is day zero (0)

Note 16    Shipments will be 3rd party billed to TAIS in Irvine, CA

Note 17    Payment terms are Net Thirty (30)

Note 18    Shipments will move under the 2003 TAIS / CEVA (EGL) agreement with the exception of limits of liability which will follow note 4 set forth above

Note 19    TAIS and CEVA agree to negotiate terms of a new agreement within sixty (60) days of the effective date of this attachment referenced below

*The rates and charges set forth in this proposal shall take precedence over rates, charges, rules and regulations published elsewhere and can be terminated by either party with a minimum of at least 30 days written notice.*

Name:     Pat Cooney
Title:    Executive Vice President
          Global Sales and Marketing

Date:     4/15/08

Name:     Mark Simons
Title:    Vice President and General Manager
          Digital Products Division

Date:     3/28/08



Page 2 of 2

CEVA000076

SEP. 24. 2008 12:23PM  Mail FAXLAX GATEWAY                                    NO. 8585   P. 13/16

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

## Attachment 1 to Appendix F: International Air Transportation Rates

### TDM Air / Air Program

| Airport | City | Country | Airport | City | Country | Service Type | Service Level | Transit Time (Days) | Unit of Measure (kgs/lbs) | Currency Code | Per Kg. |
|---------|------|---------|---------|------|---------|--------------|---------------|---------------------|---------------------------|---------------|---------|
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Transship with Crating | 6 | Kilos | USD | $5.03 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Transship without Crating | 6 | Kilos | USD | $4.97 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Interline with Crating | 9 | Kilos | USD | $5.03 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Interline without Crating | 9 | Kilos | USD | $4.97 |

Note 1  Transship pricing subject to two (2) fuel surcharges and two (2) security surcharges at market rates
*CEVA will provide monthly updates on fuel pricing from the Shanghai and Los Angeles Markets*

Note 2  Interline pricing subject to one (1) fuel surcharge and one (1) security surcharge at market rates

Note 3  Per Kilo Rate is a door-to-door at the Kuehne + Nagel warehouse in Mexico City

Note 4  **Standard liability applies** ($ 20.00 per kilo / $ 9.07 per pound)

Note 5  Per Kilo Pricing is contingent on minimum shipment quantities of six (6) full pallets

Note 6  Per Kilo Pricing Does NOT include Custodia
*Custodia defined as a shipment that is requested to remain in the airport warehouse for a period longer than 72 hours*

Note 7  Per Kilo Pricing Does **NOT** include Duty and Tax

Note 8  Per Kilo Pricing Does **NOT** include Expedite charges
*Expedite defined as a shipment where a request from TAIS or TDM is placed to process the NOM / NYCE & Customs Clearance in a period less than 48 hours after arrival in Mexico City*

Note 9  Per Kilo Pricing Does include three (3) free days at MEX airport warehouse

Note 10  Per Kilo Pricing Does include data entry of the part and serial numbers for the pedimento



CEVA000077

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

Note 11   Per Kilo Pricing Does Include delivery in an armored vehicle until such a time as not required by Toshiba (TAIS) insurance company
*Toshiba (TAIS) agrees to inform CEVA Logistics as soon as approval to drop the armored delivery requirement is obtained from their (TAIS) insurance company – Nipponkoa*

Note 12   Per Kilo Pricing Does include completion of the NOM / NYCE process
*Outer labeling of each unit*
*Opening of each carton and removal of original warranty and insertion of Spanish language warranty*
*Labeling of the software package*
*Labeling of the notebook computer*
*Verification of the serial numbers on the notebook power supply cord*

Note 13   Per Kilo Pricing Does include pallets being rebuilt upon completion of the NOM / NYCE process using the original packaging before delivery to Kuehne + Nagel.

Note 14   Destination charges **NOT** included in the DTD rate (Notes 6, 7, and 8 above and any other charges not listed on this document) will be billed directly to Toshiba de Mexico (TDM)

Note 15   Pick up day is day zero (0)

Note 16   Shipments will be 3rd party billed to TAIS in Irvine, CA

Note 17   Payment terms are Net Thirty (30)

Note 18   Shipments will move under the 2003 TAIS / CEVA (EGL) agreement with the exception of limits of liability which will follow note 4 set forth above

Note 19   TAIS and CEVA agree to negotiate terms of a new agreement within sixty (60) days of the effective date of this attachment referenced below

*The rates and charges set forth in this proposal shall take precedence over rates, charges, rules and regulations published elsewhere and can be terminated by either party with a minimum of at least 30 days written notice.*

Name:      Pat Cooney
Title:      Executive Vice President
           Global Sales and Marketing

Date:      4/15/08

Name:      Mark Simons
Title:      Vice President and General Manager
           Digital Products Division

Date:      3/28/08

CEVA000078

SEP. 24. 2008 12:23PM Mail FAXLAX GATEWAY                    NO. 8585   P. 9/16

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

## Attachment 2 to Appendix F: International Air Transportation Rates

### TDM Sea / Air Program

| Airport | City | Country | Airport | City | Country | Service Type | Service Level | Transit Time (Days) | Unit of Measure (kgs/lbs) | Currency Code | Per Kg. |
|---------|------|---------|---------|------|---------|--------------|---------------|---------------------|---------------------------|---------------|---------|
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Sea Air via LAX with Crating | 17 | Kilos | USD | $ 2.38 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Sea Air via LAX without Crating | 17 | Kilos | USD | $ 2.32 |

Note 1    Sea Air pricing subject to one (1) air fuel surcharge and one (1) air security surcharge

Note 2    Shipments will be moved under the TAIS / Matson agreement
          *Any pricing adjustments or additional Matson charges will be passed back to TAIS and pro-rated per kilo*

Note 3    Per Kilo Rate is door-to-door at the Kuehne + Nagel warehouse in Mexico City

Note 4    **Standard liability applies** ($ 20.00 per kilo / $ 9.07 per pound)

Note 5    Per Kilo Pricing is contingent on minimum shipment quantities of six (6) full pallets

Note 6    Per Kilo Pricing Does **NOT** include Custodia
          *Custodia defined as a shipment that is requested to remain in the airport warehouse for a period longer than 72 hours*

Note 7    Per Kilo Pricing Does **NOT** include Duty and Tax

Note 8    Per Kilo Pricing Does **NOT** include Expedite charges
          *Expedite defined as a shipment where a request from TAIS or TDM is placed to process the NOM / NYCE & Customs Clearance in a period less than 48 hours after arrival in Mexico City*

Note 9    Per Kilo Pricing Does include three (3) free days at MEX airport warehouse

Note 10   Per Kilo Pricing Does include data entry of the part and serial numbers for the pedimento

Note 11   Per Kilo Pricing Does include delivery in an armored vehicle until such a time as not required by Toshiba (TAIS) insurance company
          *Toshiba (TAIS) agrees to inform CEVA Logistics as soon as approval to drop the armored delivery requirement is obtained from their (TAIS) insurance company – Nipponkoa*

CEVA000079

SEP. 24. 2008 12:23PM Mail FAXLAX GATEWAY                    NO. 8585   P. 10/16

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

| | |
|---|---|
| Note 12 | Per Kilo Pricing Does include completion of the NOM / NYCE process<br>*Outer labeling of each unit*<br>*Opening of each carton and removal of original warranty and insertion of Spanish language warranty*<br>*Labeling of the software package*<br>*Labeling of the notebook computer*<br>*Verification of the serial numbers on the notebook power supply cord* |
| Note 13 | Per Kilo Pricing Does include pallets being rebuilt upon completion of the NOM / NYCE process using the original packaging before delivery to Kuehne + Nagel. |
| Note 14 | Destination charges NOT included in the DTD rate (Notes 6, 7, and 8 above and any other charges not listed on this document) will be billed directly to Toshiba de Mexico (TDM) |
| Note 15 | **Pick up day is day zero (0) – Release day must coincide with Matson's cut-off and sailing schedule for transit time requirement to be in effect** |
| Note 16 | Shipments will be 3rd party billed to TAIS in Irvine, CA |
| Note 17 | Payment terms are Net Thirty (30) |
| Note 18 | Shipments will move under the 2003 TAIS / CEVA (EGL) agreement with the exception of limits of liability which will follow note 4 set forth above |
| Note 19 | TAIS and CEVA agree to negotiate terms of a new agreement within sixty (60) days of the effective date of this attachment referenced below |

*The rates and charges set forth in this proposal shall take precedence over rates, charges, rules and regulations published elsewhere and can be terminated by either party with a minimum of at least 30 days written notice.*

Name:    Pat Cooney
Title:    Executive Vice President
          Global Sales and Marketing

Date:    4/15/08

Name:    Mark Simons
Title:    Vice President and General Manager
          Digital Products Division

Date:    3/28/08



CEVA000080

SEP. 24. 2008 12:23PM  Mail FAXLAX GATEWAY                    NO. 8585   P. 11/16

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

## Attachment 2 to Appendix F: International Air Transportation Rates

### TDM Sea / Air Program

| Airport | City | Country | Airport | City | Country | Service Type | Service Level | Transit Time (Days) | Unit of Measure (kgs/lbs) | Currency Code | Per Kg. |
|---------|------|---------|---------|------|---------|-------------|---------------|---------------------|---------------------------|---------------|---------|
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Sea Air via LAX with Crating | 17 | Kilos | USD | $ 2.38 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Sea Air via LAX without Crating | 17 | Kilos | USD | $ 2.32 |

Note 1   Sea Air pricing subject to one (1) air fuel surcharge and one (1) air security surcharge

Note 2   Shipments will be moved under the TAIS / Matson agreement
*Any pricing adjustments or additional Matson charges will be passed back to TAIS and pro-rated per kilo*

Note 3   Per Kilo Rate is door-to-door at the Kuehne + Nagel warehouse in Mexico City

Note 4   **Standard liability applies** ($ 20.00 per kilo / $ 9.07 per pound)

Note 5   Per Kilo Pricing is contingent on minimum shipment quantities of six (6) full pallets

Note 6   Per Kilo Pricing Does **NOT** include Custodia
*Custodia defined as a shipment that is requested to remain in the airport warehouse for a period longer than 72 hours*

Note 7   Per Kilo Pricing Does **NOT** include Duty and Tax

Note 8   Per Kilo Pricing Does **NOT** include Expedite charges
*Expedite defined as a shipment where a request from TAIS or TDM is placed to process the NOM / NYCE & Customs Clearance in a period less than 48 hours after arrival in Mexico City*

Note 9   Per Kilo Pricing Does include three (3) free days at MEX airport warehouse

Note 10  Per Kilo Pricing Does include data entry of the part and serial numbers for the pedimento

Note 11  Per Kilo Pricing Does include delivery in an armored vehicle until such a time as not required by Toshiba (TAIS) insurance company
*Toshiba (TAIS) agrees to inform CEVA Logistics as soon as approval to drop the armored delivery requirement is obtained from their (TAIS) insurance company – Nipponkoa*

CEVA000081

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

Note 12    Per Kilo Pricing Does include completion of the NOM / NYCE process
           *Outer labeling of each unit*
           *Opening of each carton and removal of original warranty and insertion of Spanish language warranty*
           *Labeling of the software package*
           *Labeling of the notebook computer*
           *Verification of the serial numbers on the notebook power supply cord*

Note 13    Per Kilo Pricing Does include pallets being rebuilt upon completion of the NOM / NYCE process using the original packaging before delivery to Kuehne + Nagel.

Note 14    Destination charges NOT included in the DTD rate (Notes 6, 7, and 8 above and any other charges not listed on this document) will be billed directly to Toshiba de Mexico (TDM)

Note 15    **Pick up day is day zero (0) – Release day must coincide with Matson's cut-off and sailing schedule for transit time requirement to be in effect**

Note 16    Shipments will be 3rd party billed to TAIS in Irvine, CA

Note 17    Payment terms are Net Thirty (30)

Note 18    Shipments will move under the 2003 TAIS / CEVA (EGL) agreement with the exception of limits of liability which will follow note 4 set forth above

Note 19    TAIS and CEVA agree to negotiate terms of a new agreement within sixty (60) days of the effective date of this attachment referenced below

*The rates and charges set forth in this proposal shall take precedence over rates, charges, rules and regulations published elsewhere and can be terminated by either party with a minimum of at least 30 days written notice.*

Name:     Pat Cooney                              Name:     Mark Simons
Title:    Executive Vice President                Title:    Vice President and General Manager
          Global Sales and Marketing                        Digital Products Division

Date:     7/15/08                                 Date:     3/28/08



CEVA000082

SEP. 24. 2008 12:23PM  Mail FAXLAX GATEWAY                                        NO. 8585   P. 5/16

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

## Attachment 3 to Appendix F: International Air Transportation Rates

## TDM Air / Air Program without Destination NOM / NYCE Process

| Airport | City | Country | Airport | City | Country | Service Type | Service Level | Transit Time (Days) | Unit of Measure (kgs/lbs) | Currency Code | Per Kg. |
|---------|------|---------|---------|------|---------|--------------|---------------|---------------------|---------------------------|---------------|---------|
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Transship with Crating | 6 | Kilos | USD | $ 4.81 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Transship without Crating | 6 | Kilos | USD | $ 4.75 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Interline with Crating | 9 | Kilos | USD | $ 4.81 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Interline without Crating | 9 | Kilos | USD | $ 4.75 |

Note 1   Transship pricing subject to two (2) fuel surcharges and two (2) security surcharges at market rates
*CEVA will provide monthly updates on fuel pricing from the Shanghai and Los Angeles Markets*

Note 2   Interline pricing subject to one (1) fuel surcharge and one (1) security surcharge at market rates

Note 3   Per Kilo Rate is a door-to-door at the Kuehne + Nagel warehouse in Mexico City

Note 4   **Standard liability applies** ($ 20.00 per kilo / $ 9.07 per pound)

Note 5   Per Kilo Pricing is contingent on minimum shipment quantities of six (6) full pallets

Note 6   Per Kilo Pricing Does **NOT** include Custodia
*Custodia defined as a shipment that is requested to remain in the airport warehouse for a period longer than 72 hours*

Note 7   Per Kilo Pricing Does **NOT** include Duty and Tax

Note 8   Per Kilo Pricing Does **NOT** include Expedite charges
*Expedite defined as a shipment where a request from TAIS or TDM is placed to process the NOM / NYCE & Customs Clearance in a period less than 48 hours after arrival in Mexico City*

Note 9   Per Kilo Pricing Does include three (3) free days at MEX airport warehouse

Note 10   Per Kilo Pricing Does include data entry of the part and serial numbers for the pedimento

Note 11   Per Kilo Pricing Does include delivery in an armored vehicle until such a time as not required by Toshiba (TAIS) insurance company
*Toshiba (TAIS) agrees to inform CEVA Logistics as soon as approval to drop the armored delivery requirement is obtained from their (TAIS) insurance company – Nipponkoa*



CEVA000083

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

Note 12   Per Kilo Pricing Does **NOT** Include completion of the NOM / NYCE process
*Outer labeling of each unit*
*Opening of each carton and removal of original warranty and insertion of Spanish language warranty*
*Labeling of the software package*
*Labeling of the notebook computer*
*Verification of the serial numbers on the notebook power supply cord*

Note 13   Destination charges **NOT** included in the DTD rate (Notes 6, 7, 8, and 12 above and any other charges not listed on this document) will be billed directly to Toshiba de Mexico (TDM)

Note 14   Pick up day is day zero (0)

Note 15   Shipments will be 3rd party billed to TAIS in Irvine, CA

Note 16   Payment terms are Net Thirty (30)

Note 17   Shipments will move under the 2003 TAIS / CEVA (EGL) agreement with the exception of limits of liability which will follow note 4 set forth above

Note 18   TAIS and CEVA agree to negotiate terms of a new agreement within sixty (60) days of the effective date of this attachment referenced below

*The rates and charges set forth in this proposal shall take precedence over rates, charges, rules and regulations published elsewhere and can be terminated by either party with a minimum of at least 30 days written notice.*

Name:     Pat Cooney
Title:    Executive Vice President
          Global Sales and Marketing

Date:     4/15/08

Name:     Mark Simons
Title:    Vice President and General Manager
          Digital Products Division

Date:     3/28/08



CEVA000084

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

## Attachment 3 to Appendix F: International Air Transportation Rates

## TDM Air / Air Program without Destination NOM / NYCE Process

| Airport | City | Country | Airport | City | Country | Service Type | Service Level | Transit Time (Days) | Unit of Measure (kgs/lbs) | Currency Code | Per Kg. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Transship with Crating | 8 | Kilos | USD | $ 4.81 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Transship without Crating | 8 | Kilos | USD | $ 4.75 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Interline with Crating | 9 | Kilos | USD | $ 4.81 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Interline without Crating | 9 | Kilos | USD | $ 4.75 |

Note 1    Transship pricing subject to two (2) fuel surcharges and two (2) security surcharges at market rates
          *CEVA will provide monthly updates on fuel pricing from the Shanghai and Los Angeles Markets*

Note 2    Interline pricing subject to one (1) fuel surcharge and one (1) security surcharge at market rates

Note 3    Per Kilo Rate is a door-to-door at the Kuehne + Nagel warehouse in Mexico City

Note 4    **Standard liability applies ($ 20.00 per kilo / $ 9.07 per pound)**

Note 5    Per Kilo Pricing is contingent on minimum shipment quantities of six (6) full pallets

Note 6    Per Kilo Pricing Does **NOT** include Custodia
          *Custodia defined as a shipment that is requested to remain in the airport warehouse for a period longer than 72 hours*

Note 7    Per Kilo Pricing Does **NOT** include Duty and Tax

Note 8    Per Kilo Pricing Does **NOT** include Expedite charges
          *Expedite defined as a shipment where a request from TAIS or TDM is placed to process the NOM / NYCE & Customs Clearance in a period less than 48 hours after arrival in Mexico City*

Note 9    Per Kilo Pricing Does include three (3) free days at MEX airport warehouse

Note 10   Per Kilo Pricing Does include data entry of the part and serial numbers for the pedimento

Note 11   Per Kilo Pricing Does include delivery in an armored vehicle until such a time as not required by Toshiba (TAIS) insurance company
          *Toshiba (TAIS) agrees to inform CEVA Logistics as soon as approval to drop the armored delivery requirement is obtained from their (TAIS) insurance company – Nipponkoa*



CEVA000085

SEP. 24. 2008 12:23PM  Mail FAXLAX GATEWAY                    NO. 8585   P. 8/16

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

**Note 12**   Per Kilo Pricing Does **NOT** include completion of the NOM / NYCE process
*Outer labeling of each unit*
*Opening of each carton and removal of original warranty and insertion of Spanish language warranty*
*Labeling of the software package*
*Labeling of the notebook computer*
*Verification of the serial numbers on the notebook power supply cord*

**Note 13**   Destination charges **NOT** included in the DTD rate (Notes 6, 7, 8, and 12 above and any other charges not listed on this document) will be billed directly to Toshiba de Mexico (TDM)

**Note 14**   Pick up day is day zero (**0**)

**Note 15**   Shipments will be 3rd party billed to TAIS in Irvine, CA

**Note 16**   Payment terms are Net Thirty (**30**)

**Note 17**   Shipments will move under the 2003 TAIS / CEVA (EGL) agreement with the exception of limits of liability which will follow note 4 set forth above

**Note 18**   TAIS and CEVA agree to negotiate terms of a new agreement within sixty (**60**) days of the effective date of this attachment referenced below

*The rates and charges set forth in this proposal shall take precedence over rates, charges, rules and regulations published elsewhere and can be terminated by either party with a minimum of at least 30 days written notice.*

Name:                                                    Name:   Mark Simons
Title:   Pat Cooney                                      Title:   Vice President and General Manager
         Executive Vice President                                 Digital Products Division
         Global Sales and Marketing

Date:    4/15/08                                         Date:    3/28/08



CEVA000086

SEP. 24. 2008 12:23PM  Mail FAXLAX GATEWAY                                    NO. 8585   P. 1/16

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

## Attachment 4 to Appendix F: International Air Transportation Rates

## TDM Sea / Air Program without Destination NOM / NYCE Process

| Airport | City | Country | Airport | City | Country | Service Type | Service Level | Transit Time (Days) | Unit of Measure (kgs/lbs) | Currency Code | Per Kg. |
|---------|------|---------|---------|------|---------|--------------|---------------|---------------------|---------------------------|---------------|---------|
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Sea Air via LAX with Crating | 17 | Kilos | USD | $ 2.18 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Sea Air via LAX without Crating | 17 | Kilos | USD | $ 2.10 |

Note 1   Sea Air pricing subject to one (1) air fuel surcharge and one (1) air security surcharge

Note 2   Shipments will be moved under the TAIS / Matson agreement
*Any pricing adjustments or additional Matson charges will be passed back to TAIS and pro-rated per kilo*

Note 3   Per Kilo Rate is a door-to-door at the Kuehne + Nagel warehouse in Mexico City

Note 4   **Standard liability applies** ($ 20.00 per kilo / $ 9.07 per pound)

Note 5   Per Kilo Pricing is contingent on minimum shipment quantities of six (6) full pallets

Note 6   Per Kilo Pricing Does NOT include Custodia
*Custodia defined as a shipment that is requested to remain in the airport warehouse for a period longer than 72 hours*

Note 7   Per Kilo Pricing Does NOT include Duty and Tax

Note 8   Per Kilo Pricing Does NOT include Expedite charges
*Expedite defined as a shipment where a request from TAIS or TDM is placed to process the NOM / NYCE & Customs Clearance in a period less than 48 hours after arrival in Mexico City*

Note 9   Per Kilo Pricing Does include three (3) free days at MEX airport warehouse

Note 10  Per Kilo Pricing Does include data entry of the part and serial numbers for the pedimento

Note 11  Per Kilo Pricing Does include delivery in an armored vehicle until such a time as not required by Toshiba (TAIS) insurance company
*Toshiba (TAIS) agrees to inform CEVA Logistics as soon as approval to drop the armored delivery requirement is obtained from their (TAIS) insurance company – Nipponkoa*

Page 1 of 2

CEVA

CEVA000087

SEP. 24. 2008 12:23PM Mail FAXLAX GATEWAY                                NO. 8585   P. 2/16

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

**Note 12**   Per Kilo Pricing Does **NOT** include completion of the NOM / NYCE process
*Outer labeling of each unit*
*Opening of each carton and removal of original warranty and insertion of Spanish language warranty*
*Labeling of the software package*
*Labeling of the notebook computer*
*Verification of the serial numbers on the notebook power supply cord*

**Note 13**   Destination charges **NOT** included in the DTD rate (Notes 6, 7, 8, and 12 above and any other charges not listed on this document) will be billed directly to Toshiba de Mexico (TDM)

**Note 14**   **Pick up day is day zero (0) – Release day must coincide with Matson's cut-off and sailing schedule for transit time requirement to be in effect**

**Note 15**   Shipments will be 3rd party billed to TAIS in Irvine, CA

**Note 16**   Payment terms are Net Thirty **(30)**

**Note 17**   Shipments will move under the 2003 TAIS / CEVA (EGL) agreement with the exception of limits of liability which will follow note 4 set forth above

**Note 18**   TAIS and CEVA agree to negotiate terms of a new agreement within sixty (60) days of the effective date of this attachment referenced below

*The rates and charges set forth in this proposal shall take precedence over rates, charges, rules and regulations published elsewhere and can be terminated by either party with a minimum of at least 30 days written notice.*

Name:   Pat Cooney
Title:   Executive Vice President
         Global Sales and Marketing

Date:   4/15/08

Name:   Mark Simons
Title:   Vice President and General Manager
         Digital Products Division

Date:   3/28/08



CEVA000088

SEP. 24. 2008 12:23PM  Mail FAXLAX GATEWAY                               NO. 8585  P. 3/16

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

### Attachment 4 to Appendix F: International Air Transportation Rates

### TDM Sea / Air Program without Destination NOM / NYCE Process

| Airport | City | Country | Airport | City | Country | Service Type | Service Level | Transit Time (Days) | Unit of Measure (kgs/lbs) | Currency Code | Per Kg. |
|---------|------|---------|---------|------|---------|--------------|---------------|---------------------|----------------------------|---------------|---------|
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Sea Air via LAX with Crating | 17 | Kilos | USD | $ 2.16 |
| SHA | Shanghai | China | MEX | Mexico City | Mexico | DTD | Sea Air via LAX without Crating | 17 | Kilos | USD | $ 2.10 |

Note 1    Sea Air pricing subject to one (1) air fuel surcharge and one (1) air security surcharge

Note 2    Shipments will be moved under the TAIS / Matson agreement
*Any pricing adjustments or additional Matson charges will be passed back to TAIS and pro-rated per kilo*

Note 3    Per Kilo Rate is a door-to-door at the Kuehne + Nagel warehouse in Mexico City

Note 4    **Standard liability applies** ($ 20.00 per kilo / $ 9.07 per pound)

Note 5    Per Kilo Pricing is contingent on minimum shipment quantities of six (6) full pallets

Note 6    Per Kilo Pricing Does **NOT** include Custodia
*Custodia defined as a shipment that is requested to remain in the airport warehouse for a period longer than 72 hours*

Note 7    Per Kilo Pricing Does **NOT** include Duty and Tax

Note 8    Per Kilo Pricing Does **NOT** include Expedite charges
*Expedite defined as a shipment where a request from TAIS or TDM is placed to process the NOM / NYCE & Customs Clearance in a period less than 48 hours after arrival in Mexico City*

Note 9    Per Kilo Pricing Does include three (3) free days at MEX airport warehouse

Note 10   Per Kilo Pricing Does include data entry of the part and serial numbers for the pedimento

Note 11   Per Kilo Pricing Does include delivery in an armored vehicle until such a time as not required by Toshiba (TAIS) insurance company
*Toshiba (TAIS) agrees to inform CEVA Logistics as soon as approval to drop the armored delivery requirement is obtained from their (TAIS) insurance company – Nipponkoa*

CEVA000089

SEP. 24. 2008 12:23PM  Mail FAXLAX GATEWAY                          NO. 8585   P. 4/16

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

| | |
|---|---|
| Note 12 | Per Kilo Pricing Does **NOT** include completion of the NOM / NYCE process<br>*Outer labeling of each unit*<br>*Opening of each carton and removal of original warranty and insertion of Spanish language warranty*<br>*Labeling of the software package*<br>*Labeling of the notebook computer*<br>*Verification of the serial numbers on the notebook power supply cord* |
| Note 13 | Destination charges **NOT** included in the DTD rate (Notes 6, 7, 8, and 12 above and any other charges not listed on this document) will be billed directly to Toshiba de Mexico (TDM) |
| Note 14 | **Pick up day is day zero (0) – Release day must coincide with Matson's cut-off and sailing schedule for transit time requirement to be in effect** |
| Note 15 | Shipments will be 3rd party billed to TAIS in Irvine, CA |
| Note 16 | Payment terms are Net Thirty (30) |
| Note 17 | Shipments will move under the 2003 TAIS / CEVA (EGL) agreement with the exception of limits of liability which will follow note 4 set forth above |
| Note 18 | TAIS and CEVA agree to negotiate terms of a new agreement within sixty (60) days of the effective date of this attachment referenced below |

*The rates and charges set forth in this proposal shall take precedence over rates, charges, rules and regulations published elsewhere and can be terminated by either party with a minimum of at least 30 days written notice.*

| | | | |
|---|---|---|---|
| Name: | Pat Cooney | Name: | Mark Simons |
| Title: | Executive Vice President<br>Global Sales and Marketing | Title: | Vice President and General Manager<br>Digital Products Division |
| Date: | 4/15/08 | Date: | 3/28/08 |



CEVA000090

# Toshiba America Information Systems (TAIS) – Toshiba de Mexico

## Attachment 2 to Appendix F: International Transportation Rates

### TDM Sea / Rail Program

|  | 20' | 40' | 40' HC |
|---|---|---|---|
| ORIGIN | $407.00 | $407.00 | $407.00 |
| HSUD | $3378.00 | $5718.00 | $5818.00 |
| CMA | $3656.00 | $5982.00 | $6182.00 |
| APL |  | $5148.00 | $5559.00 |
| CSL | $3500.00 | $6168.00 | $6368.00 |
| Origin Pick Up | | | |
| QUANTA | $360.00 | $430.00 | $430.00 |
| COMPAL | $380.00 | $460.00 | $460.00 |
| OTHER | $265.00 | $355.00 | $355.00 |
| Destination Charges | | | |
| SERVICE | PRICE | VALUE | |
| Customs Clearance | $1.50 | Per Unit | |
| Forklift | $15.00 | Per Pallet | |
| Nylon Strap | $10.00 | Per Pallet | |
| Inbond Fee | $120.00 | Per HOBL | |
| CEVA Handling | $140.00 | Per HOBL | |
| Previo | $35.00 | Per HOBL | |
| Container Positioning | $100.00 | Per HOBL | |
| Floor Fee | $120.00 | Per HOBL | |
| Armored Escort | $420.00 | Per Container | |
| Expedite | | | |
| 751 units and up per day | $300.00 | Per HOBL | |
| Clearance over 750 units per day | $0.35 | Per Unit | |

Note 1    Shipments will be moved under the CEVA's ocean contracts

Note 2    Pricing is determined by pick up location, container size, steamship line, units and pallets shipped

Note 3    **Standard liability applies** ($ 20.00 per kilo / $ 9.07 per pound)

Note 4    Per Kilo Pricing Does **NOT** include Custodia
*Custodia defined as a shipment that is requested to remain in the Mexico ocean warehouse for a period longer than 5 days*

Note 5    Per Kilo Pricing Does **NOT** include Duty and Tax

Note 6    Per Kilo Pricing Does **NOT** include Expedite charges
*Expedite defined as a shipment where a request from TAIS or TDM is placed to process the NOM / NYCE & Customs Clearance in a period less than 48 hours after arrival in Mexico City*


CEVA000091

## Toshiba America Information Systems (TAIS) – Toshiba de Mexico

Note 7      Per Kilo Pricing Does include three **(5)** free days at MEX ocean warehouse

Note 8      Per Kilo Pricing Does include data entry of the part and serial numbers for the pedimento up to 750 units per day
            *A request from TAIS or TdM to clear more than 750 units in a given day will result in expedite charges*

Note 9      Per Kilo Pricing Does include delivery in armed escort until such a time as not required by Toshiba (TAIS) insurance
            company
            *Toshiba (TAIS) agrees to inform CEVA Logistics as soon as approval to drop the armed escort delivery requirement
            is obtained from their (TAIS) insurance company – Nipponkoa*

Note 10     Per Kilo Pricing Does include completion of the NOM / NYCE process and previo
            *Opening of each carton*
            *Removal of laptop*
            *Removal of adapter*
            *Validation of laptop and adapter*
            *Repack laptop and adapter*

Note 11     Per Kilo Pricing Does include pallets being rebuilt upon completion of the NOM / NYCE process using the original
            packaging before delivery to Kuehne + Nagel.

Note 12     Destination charges NOT included in the DTD rate (Notes 4, 5, and 6 above and any other charges not listed on this
            document) will be billed directly to Toshiba de Mexico (TDM)

Note 13     Pick up day is day zero **(0)** – **Release day must coincide with CEVA's cut-off and sailing schedule for transit time
            requirement to be in effect**

Note 14     Shipments will be 3rd party billed to TAIS in Irvine, CA

Note 15     Payment terms are Net Thirty **(45)**

Note 16     Shipments will move under the 2003 TAIS / CEVA (EGL) agreement with the exception of limits of liability which
            will follow note 3 set forth above

Note 17     TAIS and CEVA agree to negotiate terms of a new agreement within sixty **(60)** days of the effective date of this
            attachment referenced below

*The rates and charges set forth in this proposal shall take precedence over rates, charges, rules and regulations published elsewhere and can be terminated by
either party with a minimum of at least 30 days written notice.*

Name:     Pat Cooney                              Name:     Mark Simons
Title:    Executive Vice President                Title:    Vice President and General Manager
          Global Sales and Marketing                        Digital Products Division

Date:     _____                Date:     _____



CEVA000092